UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

                  Plaintiff,

                                    Case No.:  21-cv-12193

      v.                           Hon: Arthur J. Tarnow

ROBERT SAMUEL SHUMAKE, JR.,
WILLARD L. JACKSON,
NICOLE T. BIRCH,
420 REAL ESTATE, LLC,
VINCENT PETRESCU, and
TRUCROWD, INC. dba FUNDANA,

                  Defendants.

---

## NOTICE OF MOTION TO DISMISS COMPLAINT

**PLEASE TAKE NOTICE,** that upon the annexed Declaration of Jonathan Uretsky and Memorandum of Law in Support, dated November 22, 2021, and upon all prior pleadings, Robert Samuel Shumake, Jr., by his undersigned attorneys, will move this Court before The Honorable Arthur J. Tarnow, U.S. District Court Judge for the Eastern District of Michigan, in Courtroom 111 at the Theodore Levin U.S. Courthouse, 231 West Lafayette Boulevard, Detroit, Michigan 48226, as soon as counsel can be heard pursuant to L.R.7.1(f), for an Order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the Plaintiff's Complaint as to any and all claims asserted by the Plaintiff against Defendant Shumake, and for such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that pursuant to L.R.7.1 (e)(2), responsive papers,

if any, must be served on the undersigned attorneys no later than twenty-one (21) days after service

of this motion.

Dated: Detroit, Michigan
       November 22, 2021


                                        **PULLP**
                                        Attorneys for Robert Samuel Shumake, Jr.


                              By:      /s/ Jonathan Uretsky

                                        Jonathan Uretsky
                                        111 Broadway, 8th Floor
                                        New York, New York 10006
                                        (212) 571-1164



**VIA ECF:**
John E. Birkenheier
Dante Roldan
Jerrold H. Kohn
*Counsel for United States Securities*
*and Exchange Commission*

**VIA ECF & FIRST CLASS MAIL:**
Hon. Arthur J. Tarnow
Theodore Levin U.S. Courthouse
231 West Lafayette Boulevard
Room 124, Judge's Chambers
Detroit, Michigan 43226

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,**

      **Plaintiff,**

             **Case No.: 21-cv-12193-AJT-APP**

  **v.**

**ROBERT SAMUEL SHUMAKE, JR.,
WILLARD L. JACKSON,
NICOLE T. BIRCH,
420 REAL ESTATE, LLC,
VINCENT PETRESCU, and
TRUCROWD, INC. dba FUNDANA,**

      **Defendants.**

_____


**Robert Shumake's Memorandum of Law in Support of his
<u>Motion to Dismiss the Complaint For Failure to State a Claim</u>**


Jonathan Uretsky
PULLP
Attorneys for Robert S. Shumake, Jr.
111 Broadway, 8th Floor
New York, NY 10006
212-571-1255

1

# TABLE OF CONTENTS

*TABLE OF CONTENTS* ................................................................................................ *2*

*TABLE OF AUTHORITIES* ......................................................................................... *3*

*PRELIMINARY STATEMENT* ................................................................................... *5*

I.     **Legal Standards** ....................................................................................... **8**

     A.    The SEC Has Failed to Plead Material Omissions in the Offerings in Violation of Securities Act Section 17(a) or Section 10(b) of the Exchange Act Against Shumake ........................................................................... 9

     B.    The SEC Fails to State a Claim for Misrepresentation in Violation of the Securities Act Section 17(a) or Section 10(b) of the Exchange Act Against Shumake ........................................................................... 11

     C.    The SEC Fails to Plead Scienter to Support a Claim for Fraud Against Shumake ................................... 14

     Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security ..., [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b–5 implements § 10(b) by declaring it unlawful: ......................................................................... 14

     D.    The SEC has Failed to Plead Violations of Sections 5(a) and 5(c) Against Shumake ............................ 17

     E.    The SEC Fails to Allege a Claim for Aiding and Abetting Fraud Against Shumake ............................... 18

     F.    Disgorgement is Not Appropriate Where There Are No Ill-Gotten Gains ............................................ 19

*CONCLUSION* ............................................................................................................. *20*

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 100 S. Ct. 1945, 64 L. Ed. 2d 611 (1980) .......... 13

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929
(2007) .................................................................................................................................. 7

*Benoay v. Decker,* 517 F. Supp. 490, 495 (E.D. Mich. 1981), *aff'd,* 735 F.2d 1363 (6th Cir. 1984)
.............................................................................................................................................. 17

*Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)............................................................ 7

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 96 S. Ct. 1375, 1384, 47 L. Ed. 2d 668 (1976)13

*Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)....................................................... 7

*In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 551 (6th Cir. 1999) ............................................ 14

*In re Smith Barney Transfer Agent Litig.,* 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) ............... 11

*Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 144, 131 S. Ct. 2296, 2303, 180
L. Ed. 2d 166 (2011) ......................................................................................................... 11

*Kokesh v. S.E.C.,* 137 S. Ct. 1635, 1643, 198 L. Ed. 2d 86 (2017) ............................................. 17

*Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37–38, 131 S. Ct. 1309, 1317–18, 179 L. Ed.
2d 398 (2011)...................................................................................................................... 7

Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)............................ 7

Ricco v. Potter, 377 F.3d 599, 602 (6th Cir.2004).......................................................................... 7

*S.E.C. v. Conaway,* 697 F. Supp. 2d 733, 747 (E.D. Mich. 2010)................................................. 17

*Sec. & Exch. Comm'n v. Coffey*, 493 F.2d 1304, 1314 (6th Cir. 1974) ......................................... 8

*Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 157, 128 S.Ct.
761, 169 L.Ed.2d 627 (2008) ........................................................................................ 7, 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed.

2d 179 (2007) ................................................................................................................. 8, 13

## PRELIMINARY STATEMENT

The Complaint filed by the Securities Exchange Commission (the "SEC") fails to adequately allege a cause of action against Robert S. Shumake, Jr. ("Shumake"). While the SEC is attempting to hold Shumake responsible for the actions of the other Defendants, the SEC's Complaint, coupled with the applicable law, does not support imposing any liability on Shumake. As such, the claim against him should be dismissed.

While perhaps not entirely appropriate to argue at this stage, it is worth noting that the SEC's allegations stretch credulity a touch too far. With a lawyer, a savvy businessman and a crowdfunding specialist amongst the other Defendants, the SEC for some reason attempts to portray *Shumake* as the supposed corporate mastermind behind complicated endeavors between those sophisticated businesspersons.  Specifically, Nicole Birch, Willard Jackson, and Vincent Petrescu each has already forgotten more about securities laws and business funding than Shumake ever learned. The SEC is not pretending that those individuals did not know exactly what they were doing, as those individuals are also defendants in this action.  Yet the SEC alleges that Shumake, of all people, was somehow the Bond-villain style mastermind expertly using these professionals as puppets.

Both legally and factually, of course, Shumake did not even have the capacity to play more than a tertiary role. Shumake acted as a marketing vendor.  Shumake shared his knowledge and ideas about the marijuana industry with the professionals who ran the company.  These days, that sets Shmake apart from startlingly few people who speak to the owners of any marijuana company. So what is left?  Shumake provided marketing services through his company Shumoja media, for which he profited very little.  He lacked the requisite intent to commit the alleged violations. The Complaint does not contain sufficient evidence to make out a claim against Shumake for violations

of the Securities and Exchange Acts. This is simply not a series of facts and circumstances upon which the relief sought by the SEC may be premised.

## BACKGROUND

The Complaint concerns two allegedly fraudulent crowdfunding offerings for securities sold to members of the public from issuers 420 Real Estate, LLC ( "420") and Transatlantic Real Estate, LLC ("Transatlantic"). Transatlantic and 420 raised funds on a crowdfunding platform hosted by TruCrowd, Inc. ("TruCrowd").

While the Complaint contains blind assertions that Shumake was the "driving force behind both offerings," there is no factual basis provided for that conclusion. Conversely, the offerings were the sole responsibility of the named executives of the company, who are notably also named co-defendants Nicole Birch (Transatlantic) and Willard Jackson (420).

By way of background, in December of 2017, Shumake plead guilty to two misdemeanor violations of the Michigan Credit Services Protection Act. These misdemeanors were as a result of him accepting payment in advance for mortgage audit services (services that he did provide, after the fact). As a condition of these misdemeanors, Mr. Shumake was forbidden to work in a position where he could have "direct control over, or access to, another person's money" for a period of 18 months. However, based upon the allegations in the Complaint taken as the truth, Shumake did *not* violate those terms. There is no allegation Shumake had any control over money in connection with the offerings in question.

The individuals responsible for the TRE and 420 offerings were Nicole Birch and Willard Jackson respectively. Named defendant Nicole Birch, an attorney who held herself out to be a specialist in public companies, fundraising for companies, and securities laws, was the "one

6

hundred percent owner, CEO, chairman and sole director" of Transatlantic Real Estate according to its offering statement. Complaint ¶ 17. Mr. Shumake never had any control over the company, nor did he have access to any of the company's financial or proprietary business material.

While the Complaint alleges that Shumake introduced Nicole Birch to Vincent Petrescu at TruCrowd, the SEC concedes "Birch, with Petrescu's assistance, wrote the Transatlantic Real Estate Form C and offering statement." Complaint ¶ 31. The Complaint also concedes Shumake provided nothing more than casual, uninformed advice to Birch (a lawyer), with whom Shumake was then in a relationship.

"Transatlantic Real Estate filed the Form C and offering statement with the SEC on September 12, 2018. Birch signed the Form C as the company's sole officer." Complaint ¶ 32. Any materially false statements in the offering statement (Complaint ¶ 38) were drafted and signed by attorney Birch. Any failures on the part of the company to perform (Complaint ¶ 40) were the responsibility of the sole owner, attorney Birch.

Similarly, named defendant Willard Jackson, a businessman with extensive experience as the previous CEO of Ebony Magazine, was the "CEO and the sole director" of 420 and solely responsible for the crowd funding in that company. Complaint ¶ 12. Mr. Shumake never had custody, possession, or control over any of the money that was raised in that company.

Mr. Shumake had personal relationships with both Nicole Birch and Willard Jackson. He was connected to both offerings because he offered the services of his company Shumoja Media. The condition of his plea in the Michigan Consumer Protection Act misdemeanors did not prohibit him from making any living at all by operating his marketing services company. He was never in violation of those conditions by doing so.

Shumake served no actual role on Transatlantic or 420, aside from corresponding with their officers. There is no allegation that he received any personal compensation from the companies, nor did he serve on their boards of directors or otherwise work for the companies. There is no evidence or even any factual basis in the Complaint that Shumake had a "leading role" in either of the offerings for these companies.

The filing of all disclosure forms, preparation of the offerings, and monetary control of the proceeds of the offerings for Transatlantic and 420, were the responsibilities of Nicole Birch and Willard Jackson respectively.

## I.  <u>Legal Standards</u>

The Complaint must be dismissed pursuant to Federal Rule 12(b)(6). A Rule 12(b)(6) motion should be granted if it appears beyond doubt that the SEC can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) quoting *Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir.2004). While the factual allegations of the complaint should be accepted as true, "[Courts] need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) citing *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (internal citation omitted); *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92

L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

To prevail on a 10(b) claim the SEC must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37–38, 131 S. Ct. 1309, 1317–18, 179 L. Ed. 2d 398 (2011) *citing Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008).

In an ordinary civil action, the Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* § 8(a)(2).  However, in cases of a Rule 12(b)(6) motion to dismiss a § 10(b) action, the standard is higher. Courts must determine whether the pleaded facts "give rise to a 'strong' inference of scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). To qualify as "strong," an inference must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *Id.*

A.  **The SEC Has Failed to Plead Material Omissions in the Offerings in Violation of Securities Act Section 17(a) or Section 10(b) of the Exchange Act Against Shumake**

Section 17(a)(2) and Rule 10b-5(2) are directed against false statements and omissions of material fact in connection with securities sales and purchases. *Sec. & Exch. Comm'n v. Coffey*, 493 F.2d 1304, 1314 (6th Cir. 1974). The omitted facts must be so material as to make the statement misleading. *Id.*

The Complaint alleges "Shumake was the driving force behind both offerings, but he kept his participation secret." Complaint ¶ 5. However, there are no specific allegations to support this assertion. Shumake was not involved in the Transatlantic Real Estate offering or the 420 Real Estate offering. He was never involved in either corporation in any capacity. He never had access to any bank accounts, money, or any control over the funds raised or decisions made. He did not draft, nor did he influence the crowdfunding offerings.

Shumake had a personal relationship with Nicole Birch, and a personal friendship with Willard Jackson. He simply gave advice to a woman with whom he was in a relationship and a friend. These individuals were highly sophisticated businesspersons, unlike Shumake. His "advice" and ideas about the marijuana industry do not rise to the level of corporate influence that the SEC insinuates, and simply put, do not warrant much less require a disclosure. Other than telling his then-girlfriend and friend they should get into the marijuana business, there is no allegation that Shumake held any role at all within the companies.

Shumake "*marketed* both offerings as opportunities for investors to share in bountiful profits from the cannabis industry, by acquiring real estate and leasing it to companies engaged in the business of growing cannabis." Complaint ¶ 6, (*emphasis added*). Shumake's participation as a marketing vendor was not a secret. Shumake owned Shumoja Media, which was engaged as a marketing firm by Transatlantic and 420. Companies may freely engage marketing firms. Under applicable law, neither an investor nor a vendor can be held liable for corporate officer's fraudulent offerings. The Supreme Court has held that vendors are *not* primary actors liable under §10(b). *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008). A series of lawyers, including Ms. Birch, advised Shumake that he did not need to disclose his role as a marketing consultant given his limited involvement and lack of control.

10

While the Complaint alleges that Shumake participated in Bangi (another unrelated entity) board meetings and advised company directors, the SEC admits that Bangi never engaged in any crowdfunding at all. Complaint ¶¶ 23-26.  Bangi is not the subject of this action. Mr. Shumake's alleged involvement (if any) with Bangi is irrelevant.

Crucially for purposes of this motion, there is not a *single* paragraph allegation in the Complaint asserting a fact supporting that Shumake was a primary officer or controlling party from either Transatlantic Real Estate or 420. There is also not a single allegation that Shumake *acted* as a primary officer or controlling party.

Nicole Birch and Willard Jackson had every right to start businesses and engage in crowdfunding within the parameters of established securities regulations.  Even assuming *arguendo* that there were violations of securities laws, any violation of securities laws is legally Birch and Jackson's responsibility, and theirs alone.  Birch and Jackson had no reason to disclose Shumake's involvement when he was not involved in the corporation in any official capacity other than a marketing vendor, and if they were supposed to do so, the responsibility falls upon them and not Shumake to do so.

**B. The SEC Fails to State a Claim for Misrepresentation in Violation of the Securities Act Section 17(a) or Section 10(b) of the Exchange Act Against Shumake**

The SEC alleges actual misrepresentations were made in the Transatlantic and 420 offerings but fails to state a claim against *Shumake* for making those misrepresentations.

The Complaint alleges that The Transatlantic Real Estate offering contained materially false and misleading statements including:

11

a. Transatlantic Real Estate employed a senior management team that had significant experience in the real estate industry and sophisticated finance and capital markets expertise,

b. Transatlantic Real Estate had contingently acquired a 9-plus acre property with 80,000 Square Foot Green Houses located in California; and

c. Transatlantic Real Estate would use $584,220 of the proceeds for "property improvement."

d. Transatlantic Real Estate was not a party to any proposed transaction with an officer, director or promoter of which such party would receive in excess of 5% of the aggregate amount of capital Transatlantic Real Estate intended to raise in the offering.

Complaint ¶ 43.

The Complaint alleges that the 420 Real Estate offering contained materially false and misleading statements, including:

a. 420 Real Estate employed a senior management team that has significant experience in all aspects of the real estate industry, including acquisitions, dispositions, leasing, development, management, and finance;

b. 420 Real Estate would use $278,960 of the proceeds for "property improvement;"

c. 420 Real Estate was not a party to any proposed transaction with an officer, director or promoter of which such party would receive in excess of 5% of the aggregate amount of capital 420 Real Estate intended to raise in the offering; and

d. 420 Real Estate only had one individual who was the company's officer, director, or "person occupying similar status or performing a similar function."

Complaint ¶ 63.

Robert Shumake is not responsible for material misrepresentations allegedly made to investors in the offerings for TRE and 420 because he was not the individual with "ultimate authority" to over those statements and how they were communicated and he did not sign those offerings, therefore he did not "make" those statements. *See Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 144, 131 S. Ct. 2296, 2303, 180 L. Ed. 2d 166 (2011) ("the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it.")  In *Janus,* the Supreme Court held that "[f]or purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus,* 131 S.Ct. at 2302 *cited by In re Smith Barney Transfer Agent Litig.,* 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) (Holding "only those officers whose signatures appear on misleading statements may be liable as the 'makers' of those statements.")

While the SEC alleges that Shumake "co-managed" Transatlantic and was "extensively involved in the company's strategic decisions" they define those allegations as having "communications with prospective investors, preparing documents and promoting the offering, and soliciting Transatlantic Real Estate advertisements, and giving direction as to the disbursement of investor money." Complaint ¶ 43. These were all functions that Shumake would have done in his capacity as owner of Shumoja Media, the marketing vendor contracted to promote Transatlantic and 420. Shumake functioned as a marketing vendor, who was literally paid by the officers of the company to engage in "communications with prospective investors, preparing

13

documents and promoting the offering, and soliciting Transatlantic Real Estate advertisements." Regarding the last issue, giving direction as to the disbursement of investor money, it is worth noting here that the investor money which Shumake allegedly directed was "directed" to the Shumoja Media entity, as his own payment for his own services. Complaint ¶ 45.

Shumake did not "make" statements in the offering because he did not prepare, sign, or have the "ultimate authority" over the offering.  Thus, any fraud in the Transatlantic offering is the responsibility of Nicole Birch alone. Similarly, the statements made in the 420 offering were made by Willard Jackson and Willard Jackson is responsible if they were materially false or omitted anything material.

### C.  The SEC Fails to Plead Scienter to Support a Claim for Fraud Against Shumake

Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security ..., [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b–5 implements § 10(b) by declaring it unlawful:

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b–5.

To establish liability under § 10(b) and Rule 10b–5, a plaintiff must prove that the defendant acted with scienter, *i.e.* "a mental state embracing intent to deceive, manipulate, or

defraud*." Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 319, 127 S. Ct. 2499, 2507, 168 L. Ed. 2d 179 (2007); *Ernst & Ernst,* 425 U.S., at 193–194, and n. 12, 96 S.Ct. 1375.

To make a case under section 10(b), the plaintiff must plead facts giving rise to a "strong" inference of scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). In determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must consider plausible opposing inferences. *Id.,* 551 U.S. at 322,. A Court must consider plausible, nonculpable explanations for the defendant's alleged conduct, as well as inferences favoring the plaintiff. *Id. Id.,* 551 U.S. at 323–24. Shumake cannot be liable for a violation of Rule 10b, where the Commission has not plead any fact so support scienter. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 96 S. Ct. 1375, 1384, 47 L. Ed. 2d 668 (1976); *see Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 100 S. Ct. 1945, 64 L. Ed. 2d 611 (1980) (scienter is an element of a violation of section 10(b) of the Securities Exchange Act of 1934 and of Rule 10b–5).

The SEC here has failed to allege facts to support a "strong" inference that Shumake had scienter for three reasons. First, the SEC has failed to set forth facts giving rise to an inference of scienter under a theory of "motive and opportunity" to defraud; second, the SEC has failed to plead scienter based on a theory of "conscious misbehavior or recklessness;" and third, competing inferences of non-fraudulent intent are more compelling. The claims against Shumake should thus be dismissed.

First, the SEC fails to plead any specific facts that show any motive for Shumake to engage in fraud related to the crowdfunding offerings by the Transatlantic and 420. Courts have held that facts showing a "motive and opportunity *may* adequately allege scienter" but that the existence of motive and opportunity is only one factor that does not independently indicate scienter

triggering liability under § 10b or Rule 10b–5 *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 551 (6th Cir. 1999).  In this case, there is no motive or opportunity to commit the alleged fraud. SEC Complaint concedes that money from Transatlantic and 420 was transferred to Shumoja Media for marketing services, which inherently refutes the idea that it was necessary to hide his involvement in the company. Mr. Shumake was providing marketing services and receiving just compensation for them, nor was he shy about his role in doing so. Therefore, there is no proposed motive alleged for Mr. Shumake to commit any fraud.

Second, the SEC failed to adequately plead motive.  In this connection, the SEC bears a heavy pleading burden of alleging facts that constitute "strong circumstantial evidence of [Shumake's] conscious misbehavior or recklessness." *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 552 (6th Cir. 1999). In the instant case, the SEC's allegations "rest on mere 'information and belief,' and therefore cannot support a strong inference of scienter." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999); citing See 15 U.S.C. § 78u–4(b)(1) (1998) ("[I]f an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.") There are no supporting facts in the SEC's Complaint upon which the SEC bases its argument as to Robert Shumake's state of mind in supposedly consciously violating 10-b. Of course, the SEC does not because it cannot, because Shumake (correctly, although that is not required) understood that mere vendors who didn't run companies do not make disclosure determinations.  The SEC's inferences appear to come from Shumake's relationship with Mr. Birch and Mr. Jackson, and his introduction of those individuals to the crowdfunding website, co-defendant TruCrowd, run by co-defendant Vincent Petrescu. Taken at face value, these allegations to not rise to the level of "strong circumstantial evidence" of "conscious misbehavior or recklessness."

Third, the inferences of Shumake's non-fraudulent intent are more compelling here. It is clear from the facts in the Complaint that Shumake did not have fraudulent intent to mislead investors. The SEC concedes that the individuals who prepared the filings and offerings for the companies, *i.e.* Birch, an attorney, and Jackson, a businessman, were the primary decisionmakers in control of these entities. Mr. Shumake relied on the opinions of counsel, and sophisticated businesspersons, regarding his own involvement with the companies. Mr. Shumake had no reason to believe he was forbidden from operating Shumoja Media, a marketing firm, so long as he was not in control of investor moneys during the probationary period set into place for his misdemeanor violations. Indeed, the facts as alleged are clear.  Shumake did not intend to exert control over any of the companies' money. He did not intend to be a part of the offering, and he certainly never intended to mislead investors with respect to these companies. The most plausible explanation is that Shumake lacked the requisite scienter to commit fraud in violation of Section 10(b) or 10(b)-5.

For these reasons the SEC has failed to plead any facts to support a "strong" showing of scienter, and the claims for violation of Section 10(b) should be dismissed as to Shumake accordingly.

**D.  The SEC has Failed to Plead Violations of Sections 5(a) and 5(c) Against Shumake**

The SEC Complaint alleges "No registration statements were filed with the SEC or were in effect in connection with offers or sales of securities of Transatlantic Real Estate …and no exemption from the registration requirements applied to… [the] sales." (Complaint ¶ 115).

This was the responsibility of Nicole Birch as the sole officer of Transatlantic Real Estate. If any violations of Sections 5(a) and (c) of the Securities Act occurred, Birch, a lawyer herself, is

solely at fault. There is no direct allegation in the Complaint that would expand that responsibility to include Robert Shumake, who was simply providing marketing services to the company.

Similarly, the SEC alleges "No registration statements were filed with the SEC or were in effect in connection with offers or sales of securities of Defendant 420 Real Estate …and no exemption from the registration requirements applied to the sales …" (Complaint ¶ 119).

The filing of proper registration statements for 420 Real Estate was the sole responsivity of Willard Jackson as the sole officer of 420 Real Estate. There is no direct allegation in the Complaint that would expand that responsibility to include Robert Shumake, who was simply providing marketing services to the company.

**E.  The SEC Fails to Allege a Claim for Aiding and Abetting Fraud Against Shumake**

Including claims for "aiding and abetting" the violations of Section 10-b and 17(a) is a peculiar choice, given the allegations found in the Complaint. The SEC provides no information or independent facts to support its bare allegations of aiding and abetting.

Courts in many instances have held that there can be no "aiding and abetting" cause of action in relation to Section 10-b. In *Ernst & Ernst v. Hochfelder,* the statement that intent is necessary to state a claim under 10(b) implicitly holds that aiding and abetting liability will not exist apart from liability for a direct violation." *Benoay v. Decker,* 517 F. Supp. 490, 495 (E.D. Mich. 1981), *aff'd,* 735 F.2d 1363 (6th Cir. 1984) (internal citation omitted). In the instant matter, for the reasons described above, the SEC has failed to plead a viable case of a direct violation of 10(b).

This is not a situation like Lorenzo v. SEC, where the Supreme Court held that a person who did not "make" a false statement under Rule 10b-5(b) may nonetheless be liable under Rule

18

10b-5(a) or (c) if he or she disseminates a false statement with intent to defraud. *Lorenzo v. SEC*, 587 U.S. ___, No. 17-1077 (U.S. Mar. 27, 2019). Here, as discussed above, there is no allegation of scienter regarding Shumake. Accordingly, there can be no "aiding and abetting" liability.

### F. Disgorgement is Not Appropriate Where There Are No Ill-Gotten Gains

Shumake cannot disgorge "ill-gotten" gains because there is no allegation that he ever received any of the money from these companies. The primary purpose of disgorgement is to deter securities violators by depriving them of their profits from illegal transactions. *Kokesh v. S.E.C.,* 137 S. Ct. 1635, 1643, 198 L. Ed. 2d 86 (2017).

Shumake does not need to be deprived of his profits, because it is not certain that he made a significant profit from these companies. The SEC has previously stated that "even where a defendant or respondent cooperates and agrees to meaningful undertakings, it should not be entitled to keep its ill-gotten gains, which we are often in a position to restore to harmed investors." In order to have ill-gotten gains, an individual must have gains, to begin with. However, Shumake would not be keeping any ill-gotten gains as he may not even have any gains from these companies.

The SEC has found that deterrence of securities is necessary when violations provide great financial returns to the violator. *S.E.C. v. Conaway*, 697 F. Supp. 2d 733, 747 (E.D. Mich. 2010) This is not the case here as Shumake's "profit" was the compensation received by Shumoja (allegedly $304,709 from Transatlantic Real Estate and $114,029 from 420 Real Estate). Vendor compensation is not profit. Further, those amounts hardly constitute a "great financial return" compared to the millions raised by the companies. More importantly, there is no allegation that money went to Shumake himself as opposed to legitimate marketing expenses. Hence, deterrence is not necessary and Shumake should not be punished for the little earnings, if any, that he has.

## **CONCLUSION**

Shumake respectfully requests that the Court dismiss the allegations against him in their entirety and with prejudice.


Dated: November 22, 2021

Respectfully submitted,

Robert Samuel Shumake, Jr.,

By his attorneys,


/s/ Jonathan Uretsky

Jonathan C. Uretsky
PULLP
111 Broadway, 8th Floor
New York, NY 10006
Telephone: (212 ) 571-1164