UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

           Plaintiff,

  v.

ROBERT SAMUEL SHUMAKE, JR.,
WILLARD L. JACKSON,
NICOLE T. BIRCH,
420 REAL ESTATE, LLC,
VINCENT PETRESCU, and
TRUCROWD, INC. dba FUNDANA,

           Defendants.

Case No.: 21-cv-12193
Hon: Arthur J. Tarnow

---

**Robert Shumake's Reply
in Support of his Motion to Dismiss the Complaint
For Failure to State a Claim**

Jonathan C. Uretsky
PULLP
Attorneys for Robert S. Shumake, Jr.
111 Broadway, 8th Floor
New York, NY 10006

i

TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................... 1

**LEGAL STANDARD** .................................................................................................................... 3

    **A.**    Shumake was not a Co-Manager ................................................................................. 3

    **B.**    Shumake did not "Make" the Alleged Misstatements .................................................. 6

    **C.**    There Can Be No Disgorgement of Rightly Earned Compensation ............................. 6

**CONCLUSION** .............................................................................................................................. 7

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............ 3

*Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 144, 131 S. Ct. 2296, 2303, 180 L. Ed. 2d 166 (2011) ..................................................................................................................... 6

*Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1942–43, 207 L. Ed. 2d 401 (2020), ..................... 7

*SEC v. Blackburn,* 431 F. Supp. 774, 809 (E.D. La. 2019) ......................................................... 5, 6

*SEC v. Enters. Sols., Inc.*, 142 F. Supp. 2d 561, 573 (S.D.N.Y. 2001) .......................................... 4

*SEC v. Merchant Capital, LLC* 483 F.3d 747, 770-72 (11th Cir. 2007) ......................................... 4

*SEC v. Solucorp Indus. Ltd.*, 274 F. Supp. 2d 379, 383-86, 420 (S.D.N.Y. 2003) ......................... 4

*SEC v. Weintraub* No. 11-21549-CIV, 2011 WL 6935280, at *4-5 (S.D. Fla. Dec. 30, 2011) ...... 3

*Solo v. United Parcel Serv. Co.,* 819 F.3d 788, 793 (6th Cir. 2016) .............................................. 3

## PRELIMINARY STATEMENT

The SEC fails to allege facts to make out a plausible claim for relief against Defendant Robert Shumake ("Shumake"). According to the Complaint, Transatlantic Real Estate ("Transatlantic") was founded by defendant Nicole Birch ("Birch"), an attorney who named herself CEO and sole officer of Transatlantic. Birch was introduced to and then engaged defendant TruCrowd/Fundana ("TruCrowd"), run by defendant Vincent Petrescu ("Petrescu") in order to engage in a crowdfunding campaign for Transatlantic. Birch prepared an offering statement on behalf of Transatlantic, seeking to raise $1,020,000 capital for her company. Pursuant to the Securities Act, crowdfunding offerings are capped at $1,070,000 and are subject to a registration exemption. According to the SEC Complaint ("Complaint"), Transatlantic used the TruCrowd platform to raise $1,020,000 from 2,000 investors.

Defendant 420 Real Estate ("420") was founded by defendant Willard Jackson ("Jackson"). Jackson was the sole officer and CEO of 420. Similarly, Mr. Jackson, on behalf of 420, retained Fundana/Trucrowd to engage in a crowdfunding campaign. Jackson prepared an offering statement and 420 allegedly raised $888,180 through crowdfunding.

Mr. Shumake's role to each of these companies, described in detail in the SEC's complaint, was nothing more than a marketing consultant.

The portrayal of Mr. Robert Shumake as some sort of common criminal is an elaborate mischaracterization unsupported by the facts in the Complaint. The constant reference to his "criminal record" seems purposely misleading, when in fact the Complaint admits that Mr. Shumake simply pled guilty to misdemeanor violations of the Michigan Credit Services Act. The SEC does not even so much as allege, nor do they make out a case, that Shumake violated the terms of that suspension. Ultimately, his "criminal history" is immaterial here, where Mr. Shumake

was not substantially involved in the offerings in question, did not materially benefit from those offerings, and was not in a position of authority over any company decisions or in control of any capital.

Mr. Shumake's involvement, as the SEC admits, was limited to a series of consulting services he provided as a vendor. He was never a controlling person in any of these entities, despite being copied on emails, making introductions, forming press releases, and securing marketing opportunities. The "suspension" related to his misdemeanor, prohibited Shumake from controlling peoples' money, not from running a marketing agency. The SEC's own regulations do not prohibit the companies from engaging marketing consultants to perform similar services.

Based the allegations in the Complaint, simply put, Shumake did nothing wrong. He provided services to the two companies in question. Taking every factual allegation as true, the SEC fails to set forth a plausible case that Mr. Shumake was a "co-manager" of either of these companies, or person with "authority" over money, as a matter of law. As such, there was no requirement to disclose his involvement in a registration statement.

The prosecution of a crowdfunding campaign is novel for the SEC. They cite little to no caselaw in support of their proposition that the crowdfunding was done improperly. Notably, the SEC does not even allege any crowdfunding claims against Shumake.[1] The fact that the investors have not received a monetary return on their investment to date, does not shift liability to Shumake in any way from the officers of the company.

Taking all of the factual allegations as true, and excluding the improper legal conclusions, there is no plausible basis for the claims against Shumake.

---

[1] The SEC recently entered into a settlement agreement with TruCrowd and Petrescu for the crowdfunding claims in the Complaint.

**LEGAL STANDARD**

This Court need not blindly consider the legal conclusions set forth by the SEC as true. When evaluating a motion to dismiss, the Court must determine whether the facts pled in the Complaint can create a plausible cause of action. *Solo v. United Parcel Serv. Co.,* 819 F.3d 788, 793 (6th Cir. 2016); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The SEC's allegations that Mr. Shumake was a "co-manager" with "substantial control" over Transatlantic and 420, or responsible for the misrepresentations made by Birch and Jackson, are improper legal conclusions unsupported by the factual allegations in the Complaint and controlling law.

A. **Shumake was not a Co-Manager**

The SEC has not adequately pled that any actual omission, material or otherwise, because Shumake had no duty to disclose his involvement in Transatlantic or 420 as a matter of law. The cases cited by the SEC in support of liability for Shumake materially differ from the facts at issue in this case.

In *SEC v. Weintraub* No. 11-21549-CIV, 2011 WL 6935280, at *4-5 (S.D. Fla. Dec. 30, 2011), the defendant was the "sole owner, officer, director, and employee" of the company. *Id.* Weintraub prepared tender offer documents which contained material misrepresentations about his company having retained loans, which he had been rejected for. *Id.* He also omitted personal details about himself, including two felony counts of organized fraud and one felony for money laundering. *Id.* He also failed to disclose that in 2002 this Court permanently enjoined him from acting as an officer or director of any public company, as a result of a previous violation of federal

securities law. *Id.* at *2 (S.D. Fla. Dec. 30, 2011). The facts alleged in the SEC complaint against Shumake do not come close to those in *Weintraub*. Weintraub was directly in control of the company and made substantial misrepresentations about himself, he was not operating as a marketing consultant. Shumake has never been sued by the SEC, has no felony history, and was operating as a marketing consultant for the two businesses in question, whose sole officers are co-defendants in this action. Similarly, in *SEC v. Merchant Capital, LLC* 483 F.3d 747, 770-72 (11th Cir. 2007) cited by the SEC, the omission related to an actual named manager of the business who omitted that he had a personal bankruptcy.

The SEC cites to cases where a consultant was found liable as a "primary violator" and "control person." Those cases are also clearly distinguishable to the facts here. In *SEC v. Enterprises. Sols., Inc.*, the court held that the omission of one consultant's involvement was material, however the "consultant" in question in *Enterprises* held a "controlling interest in the company through [other] entities." *S.E.C. v. Enterprises Sols., Inc.,* 142 F. Supp. 2d 561, 574 (S.D.N.Y. 2001). The "consultant" aided in the drafting and revision of the Registration Statement and was found to have taken direct initiative in the founding and organizing of the business in question. *Id.* Moreover, the "consultant" had an "extensive history of criminal and regulatory violations." *Id.* In the present case, the SEC fails to allege that Shumake took direct initiative to found the organizations. Shumake did not participate in drafting any statements by the companies, and did not have any interest, let alone a controlling interest, in the companies. Shumake has no extensive criminal history and has never been found liable for a securities violation.

In *SEC v. Solucorp Indus. Ltd.*, 274 F. Supp. 2d 379, 383-86, 420 (S.D.N.Y. 2003), the Court found that a purported "consultant" was a de facto officer of the company. *Solucorp* is also distinguishable, where in that case "virtually no action could be taken without the consultant's

4

approval, employees viewed the company as the consultant's 'baby;' the consultant 'was the only guy bringing money in;' the consultant leveraged that role to extract benefits from the company, and business and merger partners dealt exclusively with the consultant in their negotiations with the company." In *Solucorp,* the "consultant" had a physical office in the company, one of the biggest out of all the directors, as well as a secretary paid for by the company. The "consultant" described himself as the "founder" of the company, and also was "responsible for raising money for the Company." *S.E.C. v. Solucorp Indus., Ltd.,* 274 F. Supp. 2d 379, 384 (S.D.N.Y. 2003). The "consultant" was not only the highest paid personnel in the company but was also given more stock options than any other officer or director, other than his wife who was also a director of the company. In this case, Shumake was not in control of the actions taken by Birch or Jackson, he was not given stock in either company, never held physical office space, and was not bringing any money in through investments. All the investments in Transatlantic and 420 were done through the crowdfunding platform (co-defendant TruCrowd), and no crowdfunding claims were brought against Shumake.

*SEC v. Blackburn,* 431 F. Supp. 774, 809 (E.D. La. 2019), cited by the SEC, is also distinguishable from Shumake. "Consultant" Blackburn founded the company and held an 86.4% stake in said company, for which he paid no money. *Id.* Blackburn issued shares of stock directly to investors, for which he was compensated by the company with additional shares, which he then sold directly into the market. *Id.* Blackburn also negotiated directly on the company's behalf with respect to certain substantial deals. *Id.* Blackburn had multiple "criminal convictions for various tax offenses, [a] lawsuit against him by Phoenix's bankruptcy trustee accusing him of misappropriating nearly $1.9 million from the company" and had an "immense level of control … over [the company] even though he was prohibited from being an officer or director because of his

5

felony convictions." *Sec. & Exch. Comm'n v. Blackburn*, 431 F. Supp. 3d 774, 807–08 (E.D. La. 2019). Shumake's misdemeanor plea, limited involvement in the formation of the company, as well as his zero percent interest in the company, distinguish him from the *Blackburn* case.

The cases cited by the SEC are clearly distinguishable from the facts in this action. Shumake was a marketing consultant, had no direct financial stake in either Transatlantic or 420, and did not have ultimate authority over the financial statements and did not have control over the money raised through the crowdfunding offerings.

### B. Shumake did not "Make" the Alleged Misstatements

The responsibility, if any, for material misrepresentations or omissions in the Transatlantic offering is with Birch, who the SEC concedes prepared, signed, and had authority over those documents.[2] The responsibility for material misrepresentations and omissions in the 420 offering is with Jackson, who the SEC concedes prepared, signed, and had authority over those documents. The law on this point is clear, liability is limited to those parties who actually "made" the filings. *See Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 144, 131 S. Ct. 2296, 2303, 180 L. Ed. 2d 166 (2011).

The fact that the officers of the companies did not allocate the funds as they promised, as alleged in the Complaint, is the responsibility of the officers of the company, and liability under Section 5 belongs with them.

### C. There Can Be No Disgorgement of Rightly Earned Compensation

There can be no disgorgement here, where the SEC has not pled that Shumake benefitted from ill-gotten gains. The SEC Complaint outlines in detail all of the services rendered by Shumoja Media, for which Shumake was paid. Disgorgement is an equitable remedy whereby courts may

---

[2] The SEC reached a substantial settlement with Birch for the claims against her.

deprive wrongdoers of their net profits from unlawful activity. *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1942–43, 207 L. Ed. 2d 401 (2020),. In the context of Securities actions, the amount of disgorgement typically equals how much money a company raises through unlawful means. As Shumake was not directly involved in the fundraising, did not have direct control over the profits, and was only paid for services rendered, disgorgement is not appropriate in the instant case.

The money paid to Shumake was not obtained by investors directly, but instead was paid as compensation to Shumoja Media by Transatlantic and 420 for marketing services. Shumake did not "obtain funds in connection with … false statements," because Shumake only obtained funds for services rendered by Shumoja Media. Based on the allegations in the Complaint, the two companies had completed their fundraising through TruCrowd, at which time they made payments to Robert Shumake, head of Shumoja Media. The SEC alleges that these payments exceeded each company's marketing budget as outlined in their offering statements. That does not, however, impose liability on the marketing agency.

Whether or not the CEO of a company makes a misstatement in an offering statement, that company must still pay its vendors, its consultants, and its contractors. Same is the case here. The SEC cannot "disgorge" earnings that were paid to Shumoja Media for marketing services rendered.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Court dismiss all of the claims against Robert Shumake in the SEC's Complaint, with prejudice.

Respectfully Submitted,

PULLP

By:<u>/s/ Jonathan Uretsky</u>
Jonathan C. Uretsky
*Counsel for Defendant*
*Robert Shumake*