```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3                         —   —   —

     UNITED STATES SECURITIES AND
 4   EXCHANGE COMMISSION,

 5             Plaintiff,
                                     Case No. 21-12193
 6      v.
                                     Hon. Matthew F. Leitman
 7   ROBERT SAMUEL SHUMAKE, JR.,
                                     (Hearing conducted
 8             Defendant.            virtually using Zoom
                                     Video Communications)
 9   _____/

10                      MOTION TO DISMISS

11           BEFORE THE HONORABLE MATTHEW F. LEITMAN
                  United States District Judge
12            Theodore Levin United States Courthouse
                  231 West Lafayette Boulevard
13                      Detroit, Michigan
                     Friday, June 9, 2023
14

15   APPEARANCES:

16    For the Plaintiff:    DANTE ROLDAN
                            JERROLD H. KOHN
17                          JOHN E. BIRKENHEIER
                            UNITED STATES SECURITIES AND EXCHANGE
18                          COMMISSION
                            175 West Jackson Boulevard, Suite 1450
19                          Chicago, IL 60604
                            (312) 886-3947
20
      For the Defendant:    JONATHAN C. URETSKY
21                          PULLP
                            111 Broadway, 8th Floor, Suite 807
22                          New York, NY 10006
                            (212) 571-1255
23

24

25        To obtain a copy of this official transcript, contact:
          Robert L. Smith, Federal Official Court Reporter
          (313) 234-2612 • robert_smith@mied.uscourts.gov
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TABLE OF CONTENTS

MATTER                                                          PAGE

MOTION TO DISMISS
Motion by Mr. Uretsky................................ 4
Reply by Mr. Birkenheier...........................14
Ruling by the Court................................20

*Motion to Dismiss • June 9, 2023*

**3**

| | |
|---|---|
| 1 | Detroit, Michigan *(Remote proceedings)* |
| 2 | Friday, June 9, 2023 |
| 3 | at about 2:01 p.m. |
| 4 | — — — |
| 5 | (Court and Counsel present via Zoom Video |
| 6 | Communications.) |
| 7 | THE LAW CLERK:  The United States District Court |
| 8 | for the Eastern District of Michigan is now in session, the |
| 9 | Honorable Matthew F. Leitman, United States District Judge, |
| 10 | presiding. |
| 11 | The Court calls Case No. 21-12193, United States |
| 12 | Securities and Exchange Commission v. Shumake, Jr., et al. |
| 13 | Counsel, please state your appearances for the |
| 14 | record. |
| 15 | MR. BIRKENHEIER:  Good morning, Your Honor. |
| 16 | John Birkenheier for the Securities and Exchange Commission. |
| 17 | THE COURT:  Good morning. |
| 18 | MR. KOHN:  Good morning, Your Honor.  Jerrold Kohn |
| 19 | for the Securities and Exchange Commission. |
| 20 | THE COURT:  Good morning. |
| 21 | MR. ROLAND:  Good morning, Your Honor. |
| 22 | Donta Roldan for the Securities and Exchange Commission. |
| 23 | THE COURT:  Good morning. |
| 24 | MR. URETSKY:  Good morning, Your Honor. |
| 25 | John Uretsky for Robert Shumake, one of the defendants. |

1          THE COURT:  Good morning.  Thanks to all of you

2    joining me.  I appreciate your time this morning.

3          We're here for a hearing on the motion that

4    Mr. Uretsky filed to dismiss the claims against Mr. Shumake.

5    And what I'd like to do is begin with Mr. Uretsky, it is his

6    motion.  And could I ask the rest of you to please mute your

7    system, and, Mr. Uretsky, would you please unmute?

8          Mr. Uretsky, I don't know that you have appeared

9    before me before, but what I like to do when I'm hearing a

10   motion is start with my questions, and then once I get

11   through my questions, I'd be pleased to hear any other points

12   that you would like to make.  Does that work for you?

13         MR. URETSKY:  That's so much better than what some

14   other judges have done, so, yes, go for it.

15         THE COURT:  Thank you.

16         Mr. Uretsky, when I read your brief in support of

17   your motion, you say in your preliminary statement that while

18   you're obligated to take the facts as alleged in the

19   complaint, you kind of want to take a step back and let me

20   know what you believe really happened, and in your view,

21   Mr. Shumake was an outside, unaffiliated vendor to who you

22   believe are the bad actors, if there are any bad actors in

23   this case.  And I certainly understand your desire to share

24   your view of the facts with me.

25         In your preliminary statement, you say -- these are

1    my words now -- you are essentially going to take a short

2    digression, tell me your view of the facts and then come back

3    to the SEC's view of the facts.  And on at least some of the

4    points that you made, I was concerned that you didn't quite

5    make it all the way back to the SEC's investigation of the

6    facts and you were pressing the motion on your versions of

7    the facts, and let me try to give some specifics and see if

8    you can share your thoughts with me.

9         So, for instance, on page 6 of your brief you have

10   a sentence -- this is Docket No. 14, pageID.79, you have the

11   following sentence, "There is no allegation Shumake had any

12   control over money in connection with the offerings in

13   question."

14        And I'm just going to refer you to a couple of the

15   paragraphs.  Paragraph 43E alleges that Mr. Shumake gave

16   directions to Birch as to the disbursement of investor money

17   from the bank accounts, and paragraph 45 alleges that Birch

18   and Shumake diverted the investors' money.

19        Isn't it fair to say that while you may ultimately

20   disagree as a factual matter, the SEC is alleging, in this

21   complaint, that he exercised control over money by directing

22   Birch to take certain actions with it, and by personally

23   participating in the diversion of money?

24        MR. URETSKY:  Yes, Your Honor.  However,

25   it's -- obviously, I probably over characterized, as you have

```
 1    pointed out.  However, what you will notice is that
 2    throughout, at no point is Mr. Shumake ever solely
 3    responsible for anything.  And then if you read into the more
 4    detailed allegations, you will see that each time, there is
 5    effectively the other co-person or co-persons is an officer
 6    or director or actual control person.  It is our contention
 7    that under the law, when you do have an allegation where
 8    there are multiple people and one is, even according to these
 9    allegations, you know, a consultant or a vendor or however
10    you see the SEC's characterizations as characterizing
11    Mr. Shumake, when combined with, for example, Co-defendant
12    Birch or Co-defendant Jackson, and you see the results that
13    they have gotten against those, that because of those
14    individuals' respective position within the company, as
15    compared with Mr. Shumake's, that they can never be
16    considered to be co-equals.  As a result, what we are
17    arguing, perhaps I went too strong in my characterization, is
18    that there's no sole allegation where it is merely the
19    allegation is that it is all controlled by Mr. Shumake.  It
20    is also with, for example, as you pointed out -- I'm sorry,
21    Ms. Birch.
22             THE COURT:  I mean, is there any requirement in the
23    statute or the case law that his control over money is only
24    relevant or actionable if it was his sole control?
25             MR. URETSKY:  It's not so much the control of the
```

 1   money.  I think there what we were looking at -- obviously,

 2   in that sentence, it was control of the money.  It is the

 3   section on making the alleged misstatements.  There is law,

 4   if you go to the alleged misstatement section, I realize I'm

 5   now diverting from your question about the money.  It's not

 6   as clear on the money, no, Your Honor.

 7        THE COURT:  Okay.  And rest assured, I'm going to

 8   have plenty of questions for your colleagues on the other

 9   side about the 10(b)(5) claim, but I just want to focus, for

10   a minute, on your argument.

11        So another sentence in your papers that I wanted to

12   ask about is on the next page of your brief, page 7, this is

13   docket No. 14, pageID.80, you say, "Mr. Shumake never had any

14   control over the company nor did he have access to any of the

15   company's financial or proprietary business material."

16        And, again, the allegation in paragraph 43 is that

17   he co-managed Trans Atlantic Real Estate with Birch and was

18   extensively involved with the strategic decisions, and then

19   they give some specific factual allegations in the

20   subparagraphs.

21        Now, at summary judgment and at trial, I understand

22   you're going to want to say that those allegations, the facts

23   that they point out, are, in your view, consistent with your

24   theory that he was nothing more than an outside consultant,

25   but it seems to me that's not the only reasonable way to view

 1   these allegations.  I mean, the SEC does seem to allege that,

 2   at least along with Birch, he did have some control over the

 3   company.  Isn't that, at least, what they allege?

 4        MR. URETSKY:  In that section, yes, Your Honor.  If

 5   you review the totality of it, it seems that they're trying

 6   to have their cake and eat it, too, and what they are

 7   attempting to do is say, hey, Nicole Birch, she served as

 8   CEO, she was the sole director of Transatlantic and Bangi as

 9   well.  She facilitated the payment of the money from

10   Trans Atlantic to herself and HP Associates.  There is a

11   similar section on Jackson.

12        And once you have somebody with that amount of

13   control, I don't know that -- obviously, 43 says what it

14   says, but you can't just say co-managed, when you actually

15   have somebody who very easily had all the power and another

16   person who, you know, I guess, at most, could give advice.

17        THE COURT:  Look, isn't the SEC's fundamental

18   theory here, that the entity itself -- this whole thing is a

19   sham, it's not a real company.  This is their theory, and I

20   understand you vehemently disagree.  But isn't the theory of

21   this action that the whole damn thing is a sham; it is set up

22   at a post-office box in Grosse Pointe, Michigan, she's in

23   Georgia.  And while she's nominally the person with the

24   power, if you look on paper, their theory that they pled here

25   is that every step of the way, this is a plan between the two

1   of them to set up a company that they going to use to commit

2   this fraud and obtain the money.  And isn't that at least

3   enough at the pleading stage, separate and apart from the

4   10(b)(5), to state the claims in this complaint?

5           MR. URETSKY:  I see where you're going with that,

6   Your Honor, but I do believe there is a distinction.  That is

7   their theory in the aggregate, you are absolutely correct.

8   And you are correct, as I said before, they are trying to

9   have their cake and eat it, too.  I think they -- and they

10  have already succeeded.  They are completely in favor of, you

11  know, taking the position that this was Ms. Birch, that this

12  was Mr. Jackson.  That it may be a fraud, a sham, all of

13  those things, but that it is Birch's fraud and sham, it is

14  Jackson's fraud and sham.

15          THE COURT:  Can I interrupt you?  Why do you say

16  the SEC is -- that there's an inconsistency in their

17  insistence that Birch and Jackson are liable?  Why isn't the

18  right way to read their theory that Birch and Jackson are

19  liable because each of them participated in a plan with

20  Shumake, and so there's nothing inconsistent, it doesn't have

21  to be one or the other, it could be both, and we, the SEC,

22  say it is both.

23          MR. URETSKY:  But here's why, Your Honor.  Those

24  individuals actually had control of the company and

25  Mr. Shumake didn't.  The difference is, if you will allow me

1   to use us, right here, as an example.  I have the opportunity

2   and platform similar to Mr. Shumake here, to try to persuade

3   you to find in favor of Mr. Shumake, to try to agree with me

4   on what I would like you to do to see my viewpoint.

5   Mr. Shumake also had that opportunity; he had that platform,

6   much as I do here, but I can't force you to do anything.  You

7   are completely in control.  Similarly --

8            THE COURT:  But, look, isn't the right analogy

9   here, the SEC -- if you were to make a correct analogy, at

10   least according to the SEC, it would be that before this

11   hearing, you and I had a separate meeting and we agreed that

12   I was going to rule in your favor and this whole exercise is

13   a sham, and then I rule in your favor and each of us get

14   something out of it.  Of course, that's not what happened,

15   but isn't that what the -- isn't that the right analogy

16   between what the SEC says happened in this case and what's

17   happening today?

18            MR. URETSKY:  Yes.  However, if so -- and again

19   thank you for pointing out that's not what happened -- I

20   still think that the responsibility for that would fall on

21   you being the judge, as opposed to me being the guy simply

22   trying to make that happen.

23            THE COURT:  So your theory is, if in the next case,

24   I conspire with a litigant to fix a case, the litigant has no

25   responsibility and it's all on me?

 1          MR. URETSKY:  It's different in the context -- my

 2     analogy is only going to work so far, but, yes, that is our

 3     theory, as analogous here.  I believe it is slightly

 4     different in the public markets, between a vendor and a

 5     control person, but, yes, using my theory, that's correct.

 6          THE COURT:  Okay.  One other question I want to

 7     ask, Mr. Uretsky.  You say on page 15 of your brief, this is

 8     Docket No. 14, pageID.88, that the SEC fails to plead any

 9     facts showing that Mr. Shumake may have had a motive to

10     engage in the fraud.

11          Why isn't the motive here two-fold; he wants to

12     make money and he understands that if there's complete

13     disclosure, people would -- would be less likely to invest.

14     More specifically, what I understand the SEC to be alleging

15     is what a complete disclosure here would have looked like,

16     would have said, among other things, Shumake is involved in

17     extensively managing the company, he's going to be engaging

18     in transactions with the company, and oh, by the way, he's

19     personally been convicted of misdemeanors and the company

20     that he ran was convicted of felony offenses.  And so the

21     idea is, if he disclosed all of that, the public would have

22     been substantially less likely to invest.  Isn't that a

23     plausible allegation of motive?

24          MR. URETSKY:  I don't believe so, Your Honor, and

25     here's why.  The amount that Mr. Shumake was allegedly, I do

```
 1    want to point out allegedly, because we disagree with even
 2    that much, but the amount he was getting, according to the
 3    complaint, is the amount that he was entitled to just as his,
 4    you know, vendor compensation for his marketing services.  In
 5    other words, according to the allegations, he did make money,
 6    but there's no incentive salesman stake, so to speak, there's
 7    no more than he was getting in any event.  If there's an
 8    allegation, I'm missing it where there is some sort of an
 9    incentive base to it.  I see your pointing out that there
10    would have been more money coming in as a result, but as I
11    see it, that goes to the others, his amount was effectively
12    no different.
13            THE COURT:  Let me ask you, I mean, the complaint
14    itself -- the notion that he's an outside vendor who is
15    actually providing legitimate services and being paid for
16    legitimate services, I certainly understand that's your
17    theory and perhaps the facts will bear that out, but unless
18    I'm missing something, that whole concept doesn't appear in
19    the complaint.  The complaint alleges he set up a sham and he
20    got money.  And so on the complaint, the motive would be,
21    even if he got a small amount of money, the idea is he
22    wouldn't have gotten any if he had told the truth in the
23    registrations.
24            MR. URETSKY:  I -- I -- again, you make a very good
25    point, Your Honor.  I see it.  I -- we would contend it's the
```

1 relative discrepancy, it's the "would he make more but for"

2 text, and I don't see that's alleged.  I don't see where it

3 says that he would have made more or less, but for this

4 alleged activity.

5          THE COURT:  Okay.  Those are the questions that I

6 have for you.  I appreciate your answers.

7          What else, if anything, would you like to share

8 with me?  And I certainly don't mean to suggest that you have

9 to say more, but I would be pleased to listen if there is any

10 other points that you would like to emphasize.

11          MR. URETSKY:  I can tell already, Your Honor, that

12 you have read this very carefully, unfortunately for me, and

13 I guess the main points, which I'm sure you are already

14 familiar with, that I just want to hit, to say that I did.

15 He's not necessarily -- you've got the co-manager down.  It

16 was the -- the issue of just making the alleged

17 misstatements, and we believe that the law is more clear on

18 that issue than it is on the ones that you have touched on,

19 that somebody in his position, who's not the maker of the

20 alleged misstatements and disgorgement, in particular, is not

21 appropriate for the type of compensation alleged.  That's

22 really all I have to add.

23          THE COURT:  Okay.  Thank you.  I appreciate that.

24          Who will be arguing for of SEC?

25          MR. BIRKENHEIER:  Your Honor, I will.

1    John Birkenheier.

2        THE COURT:  All right.  What I'd like to do is do

3    the same thing, Mr. Birkenheier, that I did with Mr. Uretsky,

4    which is start with my questions and then I would be pleased

5    to hear any other point that you would like to make.

6        And the focus of my questions for you guys is

7    really on the 10(b)(5) claim here.  Let me start with a broad

8    question that's not in the nature of a purely legal question,

9    and then get to the legal question.

10       The broad question is:  If I were to deny the

11   motion with respect to all claims, other than the 10(b)(5)

12   claim, and dismiss the 10(b)(5) claim, does that really

13   matter to your case?  You don't need him to be the maker in

14   order to hold him liable for what you claim were fraudulent

15   statements, right?

16       MR. BIRKENHEIER:  I think, legally, that's probably

17   right, although I'm not -- to tell you the truth, I wasn't

18   anticipating that particular question, and I'm not sure -- I

19   would need time to think through all the implications of

20   losing the 10(b)(5) claim.  But if I may, I'd like to point

21   one thing out, and that is that the maker argument or the

22   argument whether Mr. Shumake was a maker, only goes to one

23   part of the 10(b)(5) claim.

24       THE COURT:  I'm sorry.  You know what, I was -- my

25   question was not nearly as specific as it should be.  What I

1    meant was, the 10(b)(5)(B) claim, the maker claim.

2         MR. BIRKENHEIER:  Okay.

3         THE COURT:  If I were to dismiss only

4    the 10(b)(5)(B) claim on the basis that he wasn't a maker,

5    you would still have plenty of other ways to seek to hold him

6    liable on the basis that he participated, to some degree, in

7    the promulgation of what you claim were false and misleading

8    statements, right?

9         MR. BIRKENHEIER:  That's correct, Your Honor.  I

10   am -- let me -- if I may, let me add, though, that there are

11   statements beyond -- or omissions and misleading statements

12   beyond his concealing his role.  You know, he -- through the

13   offering statements.  He personally interacted with Petrescu,

14   the principal of crowdfunding platform.  He also communicated

15   with investors and drafts promotional materials.  Now, your

16   complaint doesn't specify what the contents of those

17   communications are, but I would submit, in the context of

18   this memo, that the reasonable inference to be drawn in favor

19   of the SEC on this motion is that he did not disclose his

20   involvement in any of those personal communications that he

21   made.

22        THE COURT:  Is -- I guess that's what I'm asking.

23   I didn't see in the complaint a specific connection between a

24   communication that he personally authored and a false

25   statement or an omission.  You claim that certain statements

1    were misleading, and the ones that you talk about -- the ones

2    that you specifically identify, here, were in the offering

3    statements.  And then you also say, you know, full stop, you

4    say there were other communications that he engaged in.  You

5    do say in 43A, he directed un -- communications with current

6    and prospective investors, and you say he helped prepare

7    documents, but I didn't see an allegation that anything

8    beyond the offering statements were misleading.

9           Are you saying that if I allowed you to amend, you

10   could identify statements that he personally authored that

11   would satisfy the maker requirement in *Janus*?

12          MR. BIRKENHEIER:  I would have to double check, but

13   I believe we could.  I don't want to guarantee that right

14   now, Your Honor, but I think we could.

15          THE COURT:  All right.  Focusing only on what is

16   currently alleged here, would you identify for me the

17   allegations in the current complaint that you believe elevate

18   Mr. Shumake to the status of a maker, as defined under *Janus*.

19          MR. BIRKENHEIER:  Yes, Your Honor.  The -- you

20   know, this standard under *Janus* is that you have to have

21   control over the content and dissemination of the statement.

22   And the way that the offering statements, with regard to the

23   concealment of Mr. Shumake's role, came together is that in

24   that, Shumake spoke and agreed with both Birch, as to the

25   Transatlantic offering, and Jackson, as to the 420 offering,

```
 1    that his role -- Shumake's role would not be disclosed
 2    because it would hinder their fundraising capability or
 3    success.  And we allege that his agreement to conceal that
 4    with Birch and with Jackson, gave -- gives him sufficient
 5    control over the omission to render him a maker of the
 6    statements that were ultimately made in the offering
 7    statements.  And then, he then was able to monitor what was
 8    being said or not said about him, because drafts of the
 9    offering statements were shown to him, sent to him as the
10    document progressed through the drafting stage.
11            THE COURT:  What allegation do you want me to look
12    at that says what you just said?
13            MR. BIRKENHEIER:  Bear with me just a moment,
14    Your Honor.
15            THE COURT:  So, look, let me put a finer point on
16    it.  If you start with paragraph 31 of the complaint, it says
17    that Birch, with Petrescu's assistance, wrote the form C in
18    the offering statement.  So right out of the gate, you've got
19    a -- the *Janus* issue is teed up, because *Janus* says,
20    primarily the person that says it is the -- and writes it and
21    says it, I guess, is the maker.  But that's -- that's not
22    dispositive.  But then it says Birch and Petrescu kept
23    Shumake informed by copying him.  That sentence -- keeping
24    somebody informed does not bespeak or suggest, to me, that
25    Shumake had control because he was kept informed.
```

 1          And then the next sentence is, Birch, Shumake and

 2     Petrescu also weighed in on the steps necessary to kick off

 3     and promote the offering.  That doesn't suggest control to

 4     me.

 5          Paragraph 32 says, Birch signed -- not dispositive,

 6     but certainly doesn't suggest that Shumake had control.

 7          Then paragraph 33 that talks about the concealment

 8     is in the passive voice.  It doesn't say Shumake controlled.

 9          Paragraph 34 says, Shumake and Birch knew that the

10     disclosure could hinder fundraising.  That doesn't say that

11     he controlled it or made an agreement.

12          MR. BIRKENHEIER:  Your Honor, if I may?  If we go

13     back a few paragraphs, paragraph 27, the last sentence reads

14     that, "Shumake also convinced Jackson to hide Shumake's

15     involvement in the 420 Real Estate offering.

16          THE COURT:  All right.  But, again, why does that

17     make him a maker?  I think there's a lot of theories under

18     which he could be liable for that, but if you go back to

19     *Janus* and you talk about the speech writer, if you convince

20     me to make a decision today, it's still my decision, I have

21     control over it.  If a board of advisors convinces an officer

22     of a company to make a decision or to make a statement, that

23     doesn't mean that a convincer is a maker.

24          MR. BIRKENHEIER:  Your Honor, I think the best we

25     have is that Shumake agreed with Birch and then with Jackson,

1   that the offering statement would not reveal his role.  So I

2   know that doesn't completely or satisfactorily address the

3   concern that you just raised, but I do think that's the best

4   we have as to the offering statements.

5           THE COURT:  Okay.  Is there anything else you would

6   like to say on any of the other points?  I can tell you I

7   certainly understand your points on the rest of the claims,

8   and I'm not really one to hide the ball, you don't need to

9   say anything else on the other claims.  The one I was

10  concerned about is the 10(b)(5)(B) claim.  So you tell me

11  whatever you want, but --

12          MR. BIRKENHEIER:  No, Your Honor.  I have nothing

13  more to say on that.

14          THE COURT:  Okay.  All right.  Does -- look, here

15  is what I'm going do.  I have read this stuff carefully, I

16  really appreciate the arguments.  I'm going to grant the

17  motion in part and deny it in part.  I'm going to grant it to

18  the extent that it seeks dismissal of the 10(b)(5)(B) claim,

19  because I think that the allegations, even when taken in

20  favor of the SEC, have not yet persuaded me that they rise to

21  the level of Mr. Shumake being a maker, as the Supreme Court

22  defined that term in the *Janus* decision.  I'm going to deny

23  the motion in all other respects, but I am willing, if the

24  SEC wants, to grant leave to amend.  Mr. Birkenheier

25  suggested that perhaps the SEC has additional information

1  that could allow it to put a finer point on these 10(b)(5)(B)

2  maker allegations, and even though this is a 2021 case, it's

3  still in the very early stages as to Mr. Shumake, because it

4  was assigned to my colleague who passed away, and there has

5  been a time lapse with COVID and all of that stuff.  So would

6  the SEC like an opportunity to amend the 10(b)(5)(B) claim?

7          MR. BIRKENHEIER:  Yes, Your Honor, with the

8  understanding that we may not do it, but --

9          THE COURT:  Okay.

10          MR. BIRKENHEIER:  -- I'd like the opportunity.

11          THE COURT:  All right.  So what I'm going to do is

12  grant the motion in part and deny it in part, along the

13  lines that I indicated.  I will allow the SEC to file an

14  amended complaint to address the maker issue.  How about we

15  say 21 days, Mr. Birkenheier?  And at the end of the 21 days,

16  you either file the amended complaint or file a notice on the

17  docket that you are going to not file an amended complaint.

18  Once you do that, either way, if you file the amended

19  complaint, Mr. Uretsky will then figure out how he wants to

20  respond.  If you file a notice saying you are not going to

21  file one, then we will tee up a quick scheduling order and

22  get this case out of the gate.  Does that work for you,

23  Mr. Birkenheier.

24          MR. BIRKENHEIER:  Yes, Your Honor, it does.

25          THE COURT:  Mr. Uretsky, does that work for you?

1      MR. URETSKY:  Yes, Your Honor, thank you.

2      THE COURT:  All right.  Mr. Birkenheier, anything

3  else for the SEC, while we are together this morning?

4      MR. BIRKENHEIER:  No, sir.

5      THE COURT:  Mr. Uretsky, anything else for you?

6      MR. URETSKY:  No, nothing.  Thank you.

7      THE COURT:  All right.  So I think the reasons that

8  I dismissed the 10(b)(5)(B) claim, I hope they're clear from

9  the record, that I don't believe there's is sufficient

10  allegations that Mr. Shumake had control over the statements,

11  as that concept is explained in *Janus*, so that will be my

12  reasoning.

13      I will just enter a short order that says, granted

14  in part and denied in part, along these lines, for the

15  reasons stated on the record, and that leave to amend has

16  been granted.  I will put the schedule.  I will look forward

17  to working with you folks as we move forward in the case.

18  Take care.  Have a nice weekend.  See you later.

19      MR. ROLAND:  Thank you, Your Honor.

20      (Proceedings concluded at 10:03 a.m.)

21                          —   —   —

22

23

24

25

1                 *C E R T I F I C A T I O N*

2          I, Robert L. Smith, Official Court Reporter of the

3 United States District Court, Eastern District of Michigan,

4 appointed pursuant to the provisions of Title 28, United

5 States Code, Section 753, do hereby certify that the

6 foregoing pages comprise a full, true and correct transcript

7 taken in the matter of UNITED STATES SECURITIES AND EXCHANGE

8 COMMISSION vs. ROBERT SAMUEL SHUMAKE, JR., Case No. 21-12193,

9 on Friday, June 9, 2023.

10

11

12                       *s/Robert L. Smith*
                          Robert L. Smith, RPR, CSR 5098

13                           Federal Official Court Reporter
                          United States District Court

14                           Eastern District of Michigan

15
   Date:  07/13/2023

16 Detroit, Michigan

17

18

19

20

21

22

23

24

25