UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 2:21-cv-12193 |
| v. | Hon. Matthew F. Leitman |
| BOBBY SHUMAKE JAPHIA f/k/a ROBERT SAMUEL SHUMAKE, JR., | |
| Defendant. | |

RESPONSE OF U.S. SECURITIES AND EXCHANGE COMMISSION
IN OPPOSITION TO DEFENDANT PETRESCU'S
MOTION FOR RELIEF UNDER RULE 60(b)(5)

Plaintiff U.S. Securities and Exchange Commission respectfully submits this response in opposition to Defendant Vincent Petrescu's motion (ECF No. 69) to set aside the final judgment entered against him on December 23, 2021. (ECF No. 21). The judgment was entered by consent two years and seven months ago. For the reasons stated in the SEC's response brief, Petrescu's motion should be denied.

Dated: July 19, 2024        Respectfully Submitted,

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

*s/John E. Birkenheier*
John E. Birkenheier, Illinois Bar No. 6270993
Jerrold H. Kohn, Illinois Bar No. 6188085

1

Dante A. Roldàn, Illinois Bar No. 6316972
U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-7390
(312) 353-7398 (facsimile)
BirkenheierJ@sec.gov
KohnJ@sec.gov
RoldanD@sec.gov

Dawn N. Ison, United States Attorney
Kevin Erskine (P69120), Assistant United States Attorney
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
Tel: (313) 226-9610
Email: Kevin.Erskine@usdoj.gov

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      Plaintiff,

      v.

BOBBY SHUMAKE JAPHIA f/k/a
ROBERT SAMUEL SHUMAKE, JR.,

      Defendant.
_____/

Case No. 2:21-cv-12193

Hon. Matthew F. Leitman

**BRIEF OF U.S. SECURITIES AND EXCHANGE COMMISSION
IN OPPOSITION TO DEFENDANT PETRESCU'S
<u>MOTION FOR RELIEF UNDER RULE 60(b)(5)</u>**

## <u>ISSUES PRESENTED</u>

1. Whether, for purposes of Fed. R. Civ. P. 60(b)(5), prospective application of a judgment against Petrescu remains equitable, when there has been no significant change in the law or the facts?

2. Whether Defendant Petrescu's motion for relief under Rule 60(b)(5) is untimely, when he waited more than two years after entry of the judgment in question and a year after entry of the Order on which he bases his motion before filing his motion?

3

# MOST APPROPRIATE AUTHORITY

1. Fed. R. Civ. P. 60(b)(5)

2. Horne v. Flores, 557 U.S. 433, 447 (2009)

3. Rufo v Inmates of Suffolk County Jail, 502 U.S. 367, 383, 384-385 (1992)

4. Blachy v. Butcher, 129 Fed. Appx. 173, 179 (6th Cir. 2005)

5. Northridge Church v. Charter Twp. of Plymouth, 647 F.3d 606, 613, 615-618 (6th Cir. 2011)

6. Thompson v. Bell, 580 F.3d 423, 443 (6th Cir. 2009)

7. United States v Tennessee, 615 F.3d 646, 653 (6th Cir. 2010)

8. United States v. Wayne County, Mich., 369 F.3d 508, 513 (6th Cir. 2004)

9. Philadelphia Welfare Rights Organization v. Shapp, 602 F.2d 1114 (3rd Cir. 1979)

10. SEC v Novinger, 40 F.4th 297 (5th Cir. 2022)

11. Duran v. Elrod, 760 F.2d 756, 759-761 (7th Cir. 1985)

12. Manzanares v. City of Albuquerque, 628 F.3d 1237, 1240 (10th Cir. 2010)

13. Taylor v Jackson, 2023 U.S. Dist. LEXIS 52761 (E.D. Mich. Jan. 23, 2023)

# FACTS

**Background**

The SEC filed this action on September 20, 2021, against six defendants, including Defendant Petrescu, his company, TruCrowd, Inc., and Bobby Shumake Japhia, f/k/a Robert S. Shumake. (ECF No. 1.) The SEC charged Japhia with fraud and with offering and selling securities in unregistered transactions. (*Id.*, Counts I, II, III and IV.) The SEC also charged Japhia with aiding and abetting certain violations of other defendants. (*Id.*, Counts V, VI, and VII.)

All the defendants except Japhia quickly entered into settlements with the SEC, and judgments were entered against them by consent in December 2021 and January 2022. (ECF Nos. 20, 21, 22, 26, and 27.) The final judgment against Petrescu was entered by consent on December 23, 2021. Thereafter, litigation continued as to Japhia.[1]

**The Charges against Petrescu and TruCrowd**

The SEC charged Petrescu and TruCrowd not with fraud, but with violating nonfraud provisions regulating crowdfunding offerings, Section 4A(a)(5) of the

---

[1] ECF No. 20 is the final judgment against Defendant Birch. Defendants Jackson and 420 Real Estate settled through a two-step process. First, they consented to judgments which included permanent injunctions and provided that monetary relief would be resolved at a later date. (ECF Nos. 26 and 27.) Later, Jackson and 420 Real Estate consented to final judgments which reaffirmed the injunctive relief and resolved the SEC's claims for monetary relief. (ECF Nos. 30 and 31.)

Securities Act of 1933 ("Securities Act") and Rule 301(c)(2) thereunder [15 U.S.C. § 77d-1(a)(5) and 17 C.F.R. § 227.301(c)(2)]. (ECF No. 1, Count VIII.) The SEC alleged that in connection with two crowdfunding offerings Petrescu and TruCrowd had a reasonable basis for believing that the crowdfunding offerings presented the potential for fraud and otherwise raised concerns about investor protection and reasonably believed, or should have reasonably believed, that they were unable to adequately or effectively assess the risk of fraud associated with the crowdfunding offerings. (*Id.*, ¶ 139.)

      The SEC alleged that Defendants Petrescu and TruCrowd ignored warnings that Japhia was secretly playing a role for the two issuers similar to that of an officer or director and that Japhia had a history of fraud. (*Id.*, ¶¶ 75 – 104.) One such warning was an email from an experienced securities attorney who warned Petrescu about Japhia's criminal record and provided details. (*Id.*, ¶¶ 88-91.) Nevertheless, Petrescu failed to fulfill his obligations under the crowdfunding rules by not following up on these red flags about Japhia. (*Id.*, ¶ 92.) Despite the red flags, Petrescu agreed to facilitate the 420 Real Estate crowdfunding offering, with Japhia's participation, on TruCrowd's portal. (*Id.*, ¶¶ 93-96.) The SEC alleged that by reason of their conduct, Defendants Petrescu and TruCrowd violated Section 4A of the Securities Act [15 U.S.C. § 77d–1] and Rules 300(c)(2) thereunder [17 C.F.R. § 227.300(c)(2)]. (*Id.*, ¶¶ 138-141.) The SEC did not

charge Defendants Petrescu and TruCrowd with fraud or, in particular, with violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder.

**Japhia's Motion to Dismiss**

Unlike the other Defendants, Japhia did not settle this matter. Instead, he filed a motion to dismiss in which he asked that all the SEC's claims against him be dismissed. (ECF No. 14.) After briefing and a hearing, the Court denied all but one narrow aspect of Japhia's motion. (ECF No. 36.) The Court dismissed the SEC's allegation that Japhia violated Exchange Act Rule 10b-5(b), on the grounds that Japhia was not a "maker" of the false and misleading statements at issue in the case. (*Id.*) The Court left in place all the SEC's other claims against Japhia, including that Japhia employed devices, schemes and artifices to defraud; obtained money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit (ECF No. 1, ¶¶ 105 - 112); offered and sold securities without registration; (*id.*, ¶¶ 113 – 120); and aided and abetted the violations of Jackson, Birch, and 420 Real Estate (*id.*, ¶¶ 121 – 135). All these claims against Japhia rest on the allegation, among others, that, as to the issuers and offerings in question,

7

Japhia secretly occupied a position similar to that of an officer or director and performed similar functions as an officer or director. (*E.g., Id.*, ¶¶ 30-31, 43, 45-47, 51-52, 54, 66-67, 69-72.) The Court's order did not address, and had no impact on, the SEC's allegations and claims against Petrescu.

**Petrescu's First Motion to Vacate the Final Judgments Against Him and TruCrowd**

On April 24, 2024, Defendant Petrescu filed a motion asking that the Final Judgments against him and Defendant TruCrowd be set aside pursuant to Fed. R. Civ. P. 60(b)(1) on the grounds of "mistake." (ECF No. 56.) Petrescu filed his motion two years and four months after entry of the two judgments. Petrescu based his motion on the Court's decision to dismiss the SEC's Rule 10b-5(b) claim against Japhia. On June 25, 2024, this Court denied Defendant Petrescu's motion as untimely under Fed. R. Civ. P 60(c). (ECF No.67.)

**Petrescu's Current Motion to Vacate Final Judgments Against Him**

On July 7, 2024, Defendant Petrescu filed a new motion asking that the Final Judgment against him be set aside pursuant to Fed. R. Civ. P. 60(b)(5). (ECF No. 69.) Petrescu asserts that the final judgment entered against him in December 2021 (ECF No. 67) should be vacated because of a significant change in the facts (ECF No. 69, PageID.873-874) and because continued enforcement of the judgment would be detrimental to the public interest. (*Id.*, PageID.874.)

8

# ARGUMENT

**I. The judgment has not been satisfied, released, or discharged; the judgment is not based on a prior judgment that has been reversed/vacated.**

Fed. R. Civ. P. 60(b)(5) authorizes relief when the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated. Defendant Petrescu's motion does not argue either of these prongs. In any event, the SEC notes that the December 23, 2021, judgment against Petrescu has not been satisfied, released, or discharged; and the portion of Rule 60(b)(5) which provides for relief when an earlier judgment, on which the judgment in question is based, has been reversed or vacated, likewise has no relevance to Petrescu's motion. The judgment at issue must be "based on" the earlier "judgment in the sense of res judicata or collateral estoppel." *See, e.g., Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1240 (10th Cir. 2010). Here, no earlier judgment has been reversed or vacated, let alone one on which the judgment against Petrescu rests through res judicata or collateral estoppel.

**II. Prospective Application of the Judgment Remains Equitable**

Under the final prong of Rule 60(b)(5), the portion which Petrescu argues here, "the court may relieve a party . . . from a final judgment . . . [if] applying it prospectively is no longer equitable; . . ." Fed. R. Civ. 60(b)(5). This provision "provides a means by which a party can ask a court to modify or vacate a judgment

or order if a significant change either in factual conditions or in law renders continued enforcement detrimental." *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009); *see also United States v Tennessee*, 615 F.3d 646, 653 (6th Cir. 2010). The Defendant "bears the burden of establishing that a significant change in circumstances warrants revision of the [consent] decree." *Rufo v Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992); see also *United States v. Wayne County, Mich.*, 369 F.3d 508, 513 (6th Cir. 2004). "Rule 60(b)(5) does not provide relief 'when it is no longer convenient to live with the terms of a [judgment].'" *SEC v Novinger*, 40 F.4th 297, 307 (5th Cir. 2022), quoting, *Rufo*, 502 U.S. at 383. Defendant Petrescu fails to meet this burden for relief under Rule 60(b)(5).

First, there has been no intervening change in controlling law. The sort of significant change of law that warrants relief under Rule 60(b)(5) is seen in *Taylor v Jackson*, 2023 U.S. Dist. LEXIS 52761 (E.D. Mich. Jan. 23, 2023), in which the court granted relief based on "a recent and monumental sea-change in the law in the Sixth Circuit with respect to the taxpayer's rights to receive the equity in his home following such a foreclosure [for delinquent property taxes] when the home's value exceeds the amount of the unpaid property taxes." Nothing of the sort has occurred in this case.

10

It is the factual basis underlying his judgment that Petrescu contends has changed. Specifically, Petrescu argues that the alleged role of Japhia has been invalidated by the Court's ruling on Japhia's motion to dismiss. (ECF. No. 36.) Petrescu asserts that the Court's dismissal of the SEC's claim against Japhia under Rule 10b-5(b) is an intervening event warranting the relief he seeks. (ECF No. 69, PageID.873-874.)

Petrescu is mistaken. This Court's narrow ruling on another party's motion to dismiss—a ruling that left intact almost all the SEC's case—is not the sort of intervening event warranting relief under Rule 60(b)(5). Even if the SEC's claims against Petrescu somehow depended on the claims against Japhia, the SEC's surviving claims against Japhia—fraud, unregistered sales, and aiding and abetting—are more than sufficient to support the SEC's allegations against Petrescu.

Petrescu is also mistaken to focus on the claims against Japhia. The SEC charged Petrescu with violations entirely different from those it has alleged against Japhia. The SEC charged Petrescu with violating Section 4A(a)(5) of the Securities Act and Rule 301(c)(2) thereunder [15 U.S.C. § 77d–1(a)(5) and 17 C.F.R. § 227.301(c)(2)]. (ECF No. 1, Count VIII.) The gist of those claims is that, although Petrescu had a reasonable basis for believing that the Transatlantic Real Estate and 420 Real Estate crowdfunding offerings presented the potential for

11

fraud and otherwise raised concerns about investor protection, he did not adequately follow up as required by Section 4A(a)(5) and Rule 301(c)(2). (*Id.*, ¶¶75-104.) Specifically, the SEC alleged that Petrescu learned enough about Japhia's activities with the issuers and about Japhia's criminal past that Petrescu should not have allowed the two offerings to proceed on the TruCrowd crowdfunding platform. (*Id.*)

The claims against Petrescu are nonfraud charges under different statutory sections and rules than the charges against Japhia. The charges against Petrescu involve entirely different issues from the claims against Japhia. That Japhia was not a "maker" of false and misleading statements for purposes of Exchange Act Rule 10b-5(b) does not resolve the questions (1) whether Japhia secretly played a role like that of an officer or director of the two issuers in this case (or in Petrescu's words acted as a "control person" or "co-manager"), (2) whether Japhia's criminal record indicated a risk to investors in the crowdfunding offerings, (3) what Petrescu knew about Japhia's role and criminal record, and (4) what Petrescu should have done to fulfill his role as a gatekeeper of a registered crowdfunding intermediary.

The change in circumstances asserted by Petrescu is nothing like circumstances in which courts have granted relief under the final prong of Rule 60(b)(5). Courts have found modification of consent decrees "warranted when

changed factual conditions make compliance with the decree substantially more onerous" or detrimental to the public interest. *See, e.g., Rufo*, 502 U.S. at 384-85; *Philadelphia Welfare Rights Organization* v. *Shapp*, 602 F.2d 1114, 1120-1121 (3rd Cir. 1979) (modification allowed where State could not find sufficient clients to meet decree targets); *Duran* v. *Elrod*, 760 F.2d 756, 759-761 (7th Cir. 1985) (modification allowed to avoid pretrial release of accused violent felons). *Cf, Northridge Church*, 647 F.3d at 615-618 (modification of consent judgment unwarranted where no significant change in law had occurred and changed factual circumstances were, *inter alia*, foreseeable at the time the consent judgment was entered).

Defendant Petrescu also asserts that continued enforcement of his judgment will undermine public trust and the integrity of judicial and regulatory processes, thereby harming the public interest. (ECF No. 69, PageID.874-875.) Petrescu does not explain how these posited harms will follow from continued enforcement of the judgment. But in any event, he is wrong. The SEC filed a complaint with detailed allegations that Petrescu violated the law governing crowdfunding offerings. While represented by counsel, Petrescu voluntarily elected to settle the SEC's claims against him. This Court's subsequent order on Japhia's motion to dismiss in no way affected Petrescu's settlement with the SEC. Petrescu may now have second thoughts about his settlement; but his second thoughts do not impair

13

the equity or legitimacy of the consent judgment entered against him. Allowing the judgment to stand will have no detrimental effect on public interest.

### III. Defendant's Motion is Untimely

Any motion for relief under Rule 60(b)(5) must be brought within "a reasonable time." What constitutes a reasonable time is determined according to the particular facts of each case, including the length of and reasons for the delay, the prejudice to the opposing party caused by the delay, and the circumstances compelling equitable relief. *Thompson v. Bell*, 580 F.3d 423, 443 (6th Cir. 2009). "The flexible nature of this time frame is not unlimited." *Blachy v Butcher*, 129 Fed. Appx. 173, 179 (6th Cir. 2005) (finding a delay of more than three years to be unreasonable).

Applying these factors to the instant matter leads to the conclusion that Petrescu's motion is untimely. Petrescu has offered no reasons why he waited more than two years after entry of the Final Judgment against him and a year after entry of the Order on which he bases his motion. The SEC would be severely prejudiced if now, more than two years after entry of the judgment against Petrescu and when the case against Japhia is well underway, litigation of the case returned to square one. And, Petrescu has offered no reasons compelling the equitable relief he seeks. Petrescu is asking the Court to vacate a legitimate consent judgment that he agreed to over two years ago, while represented by counsel. His delay is simply

14

unreasonable. *See Blachy*, 129 Fed. Appx. at 179. Petrescu's motion should be denied on timeliness grounds alone.

## CONCLUSION

For the foregoing reasons, the Court should deny Petrescu's motion.

Dated: July 19, 2024          Respectfully Submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

*s/John E. Birkenheier*
John E. Birkenheier, Illinois Bar No. 6270993
Jerrold H. Kohn, Illinois Bar No. 6188085
Dante A. Roldàn, Illinois Bar No. 6316972
U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-7390
(312) 353-7398 (facsimile)
BirkenheierJ@sec.gov
KohnJ@sec.gov
RoldanD@sec.gov

Dawn N. Ison, United States Attorney
Kevin Erskine (P69120), Assistant United States Attorney
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
Tel: (313) 226-9610
Email: Kevin.Erskine@usdoj.gov

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, I caused to be served the foregoing Response in Opposition to Defendant Petrescu's Motion for Relief Under Rule 60(b)(5) on the *pro se* parties shown below at the indicated addresses by first class U.S. mail and by email.

*s/John E. Birkenheier*
John E. Birkenheier

Vincent Petrescu
505 Harper Dr.
Algonquin, IL 60102
vincent.petrescu@gmail.com

Bobby Shumake Japhia
4072 Huckleberry Circle
Dallas, TX 75216
robshumake@gmail.com