UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

Plaintiff,

v.

ROBERT SAMUEL SHUMAKE, JR., et al.,

Defendants.

Case: **2:21-cv-12193-MFL-APP**

RESPONSE TO SEC'S OPPOSITION

Hon. Matthew F. Leitman

RESPONSE TO SEC'S OPPOSITION

The SEC's opposition fails to adequately address the significant changes in factual conditions that warrant relief under Rule 60(b)(5). While the SEC correctly notes that Rule 60(b)(5) requires a showing of changed circumstances that render continued enforcement of the judgment inequitable, it mischaracterizes the nature and significance of the changes in this case.

I. **THE COURT'S JUNE 9, 2023 ORDER CONSTITUTES THE SIGNIFICANT FACTUAL CHANGE**

Contrary to the SEC's assertions, the Court's June 9, 2023 order dismissing the SEC's Rule 10b-5(b) claim against Japhia f/k/a Shumake fundamentally alters the

factual landscape underlying the judgment against Petrescu. This ruling, issued nearly two years after the original judgment, directly undermines a key premise of the SEC's case - that Japhia acted as a co-manager of the two offerings.

The SEC's attempt to minimize this Order (ECF No. 36) as narrow ignores its broader implications. By finding Japhia was not a "maker" of false statements, the Court cast doubt on the SEC's entire theory of Japhia's role and influence. This change goes to the heart of the SEC's allegations against Petrescu regarding his failure to adequately investigate and act on Japhia's involvement.

The Supreme Court in Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992), clarified that Rule 60(b)(5) is intended to address substantial changes in factual conditions that make continued enforcement unjust. The SEC's opposition does not sufficiently engage with this broader interpretation of Rule 60(b)(5).

## II.     TIMELINESS OF THE MOTION / REASONABLE TIME

Contrary to the SEC's assertions, Petrescu's motion is timely under Rule 60(b)(5). The rule does not impose a strict time limit but rather requires the motion to be made within a "reasonable time". What constitutes a reasonable time depends on the facts of each case (Thompson v. Bell, 580 F.3d 423, 443 (6th Cir. 2009).

Here, the key change in factual conditions occurred on June 9, 2023, when this Court issued its order invalidating critical SEC allegations against Japhia. Recognizing the significance of this ruling, Petrescu diligently filed his first motion to vacate the judgments on April 24, 2024, less than a year later. This demonstrates

Petrescu's prompt efforts to seek relief once the full implications of the Court's order became apparent.

The current Rule 60(b)(5) motion is a continuation of Petrescu's timely efforts to address these substantially changed circumstances. Given the complexity of the issues and the need to thoroughly assess the ramifications of the Court's ruling, the timing of this motion is reasonable.

The SEC's attempt to impose a strict deadline finds no support in the text of Rule 60(b)(5). The rule's **"reasonable time"** standard provides flexibility to consider the unique context of each case. Petrescu's actions in first moving to vacate the judgments within a year of the pivotal June 2023 order and then filing this motion satisfy the timeliness requirement.

### III. THE SEC'S CLAIMS AGAINST PETRESCU ARE INEXTRICABLY LINKED TO THOSE AGAINST JAPHIA

The SEC's contention that the claims against Petrescu are entirely separate from those against Japhia is unavailing. While the specific statutory provisions differ, the underlying factual allegations are fundamentally intertwined. The Court's finding that Japhia was not a "maker" of false statements directly impacts the assessment of Petrescu's due diligence obligations as a crowdfunding portal.

Petrescu's alleged violations under Section 4A(a)(5) and Rule 301(c)(2) hinge on the premise that he had reason to believe the offerings presented risks of fraud based on Japhia's alleged control over the two offerings.

While analyzing the Complaint (ECF No 1, page 20 to 27 - paragraphs 75 to 104 alleged claims against Petrescu become moot points when read from the perspective that Japhia/Shumake had no controlling role.

1. Petrescu worked with both Shumake and Birch to file the Transatlantic Real Estate Form C and offering statement, despite Birch claiming to be the sole officer (paragraphs 81-82).
2. Petrescu did not question why Shumake's involvement was omitted from the offering statement (paragraph 83).
3. Petrescu received warnings about potential "SEC, Bad Actor Check" issues related to Shumake but did not conduct such a check (paragraphs 84-87).
4. Petrescu was informed of Shumake's criminal history but still allowed the Transatlantic Real Estate offering to continue (paragraphs 88-92).
5. Petrescu agreed to work with Shumake again on the 420 Real Estate offering without investigating Shumake's background (paragraphs 93-96).
6. Petrescu forwarded investor complaints to Shumake, indicating Shumake's ongoing involvement (paragraph 99).
7. Petrescu was informed that Shumake had improperly redirected funds for 420 Real Estate but did not question this (paragraph 100).
8. Petrescu admitted he understood Shumake to be a representative of Transatlantic Real Estate (paragraph 102).
9. Petrescu continued working with Shumake even after these issues came to light (paragraph 104)

The Court's ruling that Shumake/Japhia had no control (ECF No 36) undermines this premise and warrants reexamination of the judgment against Petrescu.

## IV. CONTINUED ENFORCEMENT IS INEQUITABLE

Maintaining the judgment against Petrescu in light of these changed circumstances would be inequitable. The original judgment was predicated on a now-invalidated view of Japhia's role. Enforcing penalties against Petrescu for failing to uncover or act on information that the Court has deemed insufficient to support Japhia had control over the offering is fundamentally unfair.

Moreover, the SEC's argument that Petrescu's non-fraud violations are unaffected ignores the interrelated nature of the allegations. The Court's ruling casts doubt on the entire factual premise underlying the SEC's case.

## V. NO PREJUDICE TO THE SEC

The SEC's claim that it would be severely prejudiced if the judgment against Petrescu is vacated is unsubstantiated and lacks specificity. The SEC has not provided concrete examples or detailed explanations of how it would be prejudiced by this action. Simply asserting that the case would "return to square one" (it will not) is insufficient to demonstrate tangible harm. The SEC must show specific, demonstrable prejudice, which it has failed to do.

### A. Lack of Specific Prejudice

The SEC's argument that it would be severely prejudiced if the judgment against

Petrescu is vacated is vague and unsupported by specific evidence. The SEC does not explain how vacating the judgment would cause it tangible harm. Courts have consistently required that claims of prejudice be substantiated with concrete examples. The SEC's failure to provide such specifics undermines its argument.

### B. Independent Continuation of the Case Against Shumake

The allegations against Petrescu are intrinsically linked to Shumake's alleged control over the offerings. The SEC's case against Petrescu was predicated on Shumake's alleged undisclosed control and fraudulent activities. If the judgment against Petrescu is vacated due to the new findings about Shumake's lack of control, it would not impact the ongoing litigation against Shumake. The SEC's case against Shumake can proceed independently, as it involves separate allegations of fraud and misconduct. The issues are distinct and separable, meaning that vacating the judgment against Petrescu would not cause the case against Shumake to "return to square one."

## VI. VACATING THE JUDGMENT SERVES THE INTERESTS OF JUSTICE AND THE PUBLIC GOOD

Contrary to the SEC's assertions, modifying the judgment is not only legally warranted but imperative to uphold the integrity of the judicial system and safeguard the public interest. Allowing a judgment to stand when its factual underpinnings have been invalidated erodes public confidence in the fairness and accuracy of SEC enforcement actions. It suggests that even reasonable reliance on the SEC's own

allegations provides no protection against liability if those allegations are later discredited.

The public has a paramount interest in a regulatory environment that is transparent, consistent, and just. Enforcing this judgment despite the SEC's claims against Japhia being legally rejected in subsequent proceedings disserves that interest. It is not merely inconvenient for Petrescu to comply with the judgment, as the SEC suggests. It is a miscarriage of justice to subject him to ongoing sanctions premised on allegations that have been stripped of legal force.

Granting relief under Rule 60(b)(5) here would reaffirm public trust in the responsiveness of the regulatory system to intervening judicial determinations. It would signal that the SEC's enforcement authority, while expansive, is not immune from the requirements of due process and the rule of law. The interests of justice demand that judgments remain grounded in valid legal and factual foundations. When those foundations crumble, as they have here, the judgment cannot stand.

In sum, vacating the judgment is not a blow to the public interest, but essential to vindicate it. It ensures that the regulatory system remains credible, equitable, and worthy of public confidence. The public good demands more. It demands that this Court exercise its equitable discretion under Rule 60(b)(5) to rectify a clear injustice and preserve the integrity of the regulatory process.

As noted in United States v. Swift & Co., 286 U.S. 106 (1932), courts have inherent power to modify injunctions to reflect changed circumstances and to avoid undermining public confidence in the judicial system.

**CONCLUSION**

The SEC's opposition fails to adequately grapple with the fundamental change in circumstances brought about by the Court's June 9, 2023 (ECF No. 36) ruling Japhia's lack of control over the two offerings. This change, coupled with Petrescu's timely efforts to seek relief, renders continued enforcement of the judgment against Petrescu inequitable and contrary to the public interest. The Court should grant relief under Rule 60(b)(5) to ensure that justice is served and that the judgment reflects the current factual and legal reality of the case.

Respectfully submitted,


/s/ *Vincent Petrescu*, Pro Se
Dated: July 29, 2024

505 Harper Dr, Algonquin, IL 60102
847.873.5335
vincent.petrescu@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024 a true and correct copy of the foregoing RESPONSE TO SEC'S OPPOSITION was sent to the Plaintiff, Securities and Exchange Commission, via email.


/s/ Vincent Petrescu, Pro Se

   July 29, 2024


505 Harper Dr, Algonquin, IL 60102
847.873.5335
vincent.petrescu@gmail.com