UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Plaintiff,

v.

                                    Case No. 21-cv-12193
                                    Hon. Matthew F. Leitman

BOBBY SHUMAKE JAPHIA,

    Defendant.
_____/

### ORDER DENYING DEFENDANT VICENT PETRESCU'S MOTION FOR RELIEF FROM JUDGMENT UNDER RULE 60(b)(5) (ECF No. 69)

In this action, the United States Securities and Exchange Commission ("SEC") brought claims against Defendant Vicent Petrescu[1] and a number of other Defendants related to the operating of a crowdfunding platform. Nearly three years ago, Petrescu consented to the entry of judgment against him. (*See* Judgment, ECF No. 21.) Earlier this year, he moved to set that consent judgment aside under Rule 60(b)(1) of the Federal Rules of Civil Procedure (*see* Mot., ECF No. 56), and the Court denied the motion. (*See* Order, ECF No. 67.) He now moves to set the consent judgment aside under Rule 60(b)(5). (*See* Mot., ECF No. 69.) For the reasons explained, the motion is **DENIED**.

---

[1] Vicent Petrescu is also known in this case as Vincent Petrescu.

1

# I

## A

On September 20, 2021, the SEC filed this action against Petrescu, Bobby Shumake Japhia,[2] and four other Defendants. The SEC's claims related to "fraudulent crowdfunding offerings" made available on TruCrowd, Inc. ("TruCrowd"), a crowdfunding platform of which Petrescu was the CEO. (*See* Compl., ECF No. 1, PageID.1-2.) The offerings were securities in two entities: 420 Real Estate, LLC ("420 LLC") and Transatlantic Real Estate, LLC ("Transatlantic"). (*See id.*) The SEC alleged that Petrescu had an obligation to serve as a "gatekeeper" for TruCrowd and to ensure that the platform offered only legitimate investment opportunities. (*See id.*) And the SEC claimed that Petrescu breached that obligation by failing to prohibit 420 LLC and Transatlantic from presenting offerings on TruCrowd and/or by failing to remove the offerings from TruCrowd. (*See id.*) The SEC did not allege that Petrescu personally committed fraud.

In contrast, the SEC claimed that Japhia did commit securities fraud. More specifically, the SEC alleged that Japhia was the "driving force" behind 420 LLC and Transatlantic, but he "kept his participation secret in order to hide a past criminal conviction arising from a mortgage fraud scheme." (*Id.*, PageID.2.) The SEC further

---

[2] Bobby Shumake Japhia was known as Robert Samuel Shumake, Jr. at the time of the alleged misconduct and at the time the SEC filed this action. (*See* Order Amending Case Caption, ECF No. 77.)

claimed that Japhia made false and misleading representations and omissions in connection with the 420 LLC and Transatlantic offerings and that he diverted large sums of money from the offering proceeds to his personal use. (*See id.*, PageID.2-3.)

The SEC's Complaint contained eight claims. (*See id.*, PageID.27-37.) The first seven claims alleged that defendants other than Petrescu and TruCrowd committed securities fraud. (*See id.*) The eighth claim alleged that Petrescu and TruCrowd were liable under Section 4A(a)(5) of the Securities Act, 15 U.S.C. § 77d–1(a)(5), and Rule 301(c)(2) thereunder, 17 C.F.R. § 227.301(c)(2). (*See id.*, PageID.35-36.) The allegations in the claim were as follows:

> 137. In connection with the Transatlantic Real Estate and 420 Real Estate crowdfunding offerings, Defendant TruCrowd was an intermediary, and Petrescu was an associated person of an intermediary, for purposes of Section 4A of the Securities Act [15 U.S.C. § 77d–1] and Rules 300(c)(1) and 300(c)(3) thereunder [17 C.F.R. §§ 227.300(c)(1) and 227.300(c)(3)].
>
> 138. As described above, Defendants Petrescu and TruCrowd allowed Defendants access to TruCrowd's crowdfunding platform in connection with the Transatlantic Real Estate and 420 Real Estate crowdfunding offerings.
>
> 139. As described in Paragraphs 75 through 104, above, Defendants Petrescu and TruCrowd (1) had a reasonable basis for believing that the Transatlantic Real Estate and 420 Real Estate crowdfunding offerings presented the potential for fraud and otherwise raised concerns about investor protection; (2) reasonably believed, or should have reasonably believed, that they were unable to adequately or effectively assess the risk of fraud associated with the Transatlantic Real Estate and 420 Real Estate crowdfunding offerings; and (3) became aware of information,

3

after they had granted access to the TruCrowd crowdfunding platform for the Transatlantic Real Estate and 420 Real Estate crowdfunding offerings, that caused them to reasonably believe, or in the exercise of reasonable care should have caused them to reasonably believe, that the Transatlantic Real Estate and 420 Real Estate crowdfunding offerings presented the potential for fraud and otherwise raised concerns about investor protection.

140. As described above, Defendants Petrescu and TruCrowd failed to deny access to TruCrowd's crowdfunding platform and failed to promptly remove the Transatlantic Real Estate and 420 Real Estate offerings from TruCrowd's crowdfunding platform, cancel the offerings, and return and direct the return of any funds that had been committed by investors in the offerings.

141. By reason of the foregoing, Defendants TruCrowd and Petrescu have violated, and unless restrained and enjoined are reasonably likely to continue to violate, Section 4A(a)(5) of the Securities Act [15 U.S.C. § 77d–1(a)(5)] and Rule 301(c)(2) thereunder [17 C.F.R. § 227.301(c)(2)].

(*Id.*, PageID.36-37.)

## B

Shortly after the Complaint was filed, Petrescu consented to the entry of judgment. (*See* Consent, ECF No. 17, PageID.183-190.) Pursuant to that consent, the Court entered a Final Judgment against Petrescu on December 23, 2021. (*See* Judgment, ECF No. 21.)

Japhia took a different route. He did not consent to the entry of a judgment against him. Instead, in November of 2021, he filed a motion to dismiss for failure to state a claim. (*See* Mot. to Dismiss, ECF No. 14.) Due to delays caused by the death of the Judge to whom the action was assigned at the time Japhia filed that

motion, it was not decided until June of 2023. At that time, the Court granted the motion in part and denied it in part. (*See* Order, ECF No. 36.) More specifically, the Court held that the claims against Japhia, for violations of 17 C.F.R. § 240.10b-5(b) ("Rule 10b-5"), failed as a matter of law because there were insufficient allegations that Japhia was a "maker" of the allegedly-misleading statements. (*See* Order, ECF No. 36; Hr'g Tr. 6/9/23, ECF No. 38, PageID.424.) The Court denied the motion in all other respects. (*See* Order, ECF No. 36.) As a result of the Court's order, the claims against Japhia under Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), under Section 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c), and for aiding and abetting violations of those sections remain alive in this action. (*See* Am. Compl., ECF No. 64.)

## C

On April 24, 2024, nearly two and a half years after judgment was entered against him, Petrescu filed a motion for relief from judgment under Rule 60(b)(1) of the Federal Rules of Civil Procedure. (*See* Mot., ECF No. 56.) In that motion, Petrescu argued that in light of the Court's dismissal of the Rule 10b-5 claims against Shumake, the entry of the Final Judgment against him (Petrescu) was a "mistake[]" that warranted setting aside the judgment. The Court denied that motion as untimely. (*See* Order, ECF No. 67, PageID.862.)

Petrescu has now filed a second motion for relief from judgment. (*See* Mot., ECF No. 69.) This time, he says that the Court should set aside the judgment under Rule 60(b)(5) because "a significant change in factual conditions renders the continued enforcement of the judgment inequitable and detrimental to the public interest." (*Id.*, PageID.872.) The change in factual circumstances, he contends, is the Court's dismissal of the Rule 10b-5 claim against Japhia. (*See id.*) According to Petrescu, the Court's ruling "invalidated" the "factual basis underlying the judgment" against him. (*Id.*) Petrescu asserts that the ruling "was unanticipated at the time of the judgment" and therefore, that its "continued application [is] inequitable." (*Id.*, PageID.873-874.)

The Court concludes that it may resolve the motion without oral argument. *See* Local Rule 7.1(f)(2).

## II

Rule 60(b)(5) of the Federal Rules of Civil Procedure provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding . . . [if] applying it prospectively is no longer equitable[.]" Fed. R. Civ. P. 60(b)(5). This Rule "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*,

502 U.S. 367, 384 (1992)). Modification of a consent judgment is an "extraordinary remedy that should not be taken lightly." *Northridge Church v. Charter Twp. Of Plymouth*, 647 F.3d 606, 614 (quoting *East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011). The burden is on the party seeking relief to show that changed circumstances warrant relief. *Horne*, 557 U.S. at 447.

A motion made under Rule 60(b)(5) "must be made within a reasonable time." Fed. R. Civ. P. 60(c). This timeline is dependent on the facts of each case. *See Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006).

### III

### A

As an initial matter, the Court concludes that Petrescu failed to seek relief under Rule 60(b)(5) within a reasonable period of time. The "'reasonable time' clock begins ticking when the movant is or should be aware of the factual basis for the motion." *Ghaleb v. Am. Steamship Co.*, 770 F. App'x 249, 249 (6th Cir. 2019). While Rule 60(c) provides some flexibility to consider the facts of each case, "[t]he flexible nature of this time frame is not unlimited." *Blachy v. Butcher*, 129 F. App'x 1723, 179 (6th Cir. 2005); *see also Days Inns*, 445 F.3d at 906. Relevant considerations include the "length of the delay, the explanations for the delay, the prejudice to the opposing party caused by the delay[,] . . . the circumstances warranting relief," and whether the dispute involves "a matter of public interest."

7

*Associated Builders & Contractors v. Michigan Dep't of Lab. & Econ. Growth*, 543 F.3d 275, 278 (6th Cir. 2008).

Petrescu waited over thirty months after judgment was entered against him before filing this motion on July 7, 2024. That lengthy delay was not reasonable.

Petrescu counters that the that the "reasonable time clock" did not start to run until June of 2023, when the Court entered its order dismissing the Rule 10b-5 claim against Japhia. There is substantial reason to doubt the correctness of that contention.[3] But even if the "clock" did start in June of 2023, Petrescu still unreasonably delayed in filing this motion. Indeed, he waited thirteen months after the Court entered its June 2023 order to seek relief under Rule 60(b)(5), and he provides no "good reason" for waiting that long. *Days Inns*, 445 F.3d 899, 906 (affirming district court's finding that delay of eleven months was unreasonable); *see also Ghaleb*, 770 F. App'x at 250 (affirming district court's finding that five

---

[3] Petrescu was (or should have been) aware long before June of 2023 that there could be a problem with the SEC's claims against Japhia under Rule 10b-5. In fact, Petrescu was (or should have been) aware of that problem even before the Court entered the judgment against him. That is because Japhia moved to dismiss the Rule 10b-5 claims on November 22, 2021, and the Court did not enter the judgment against Petrescu until one month later. Thus, by November of 2021, Petrescu (who was then apparently represented by counsel, *see* Consent of Def. Vicent Petrescu, ECF No. 17, PageID.191), knew or should have known that he had the ability to resist the entry of a judgment against him on the ground that the Rule 10b-5 claims against Japhia were deficient for the reasons identified in Japhia's motion.

month delay was unreasonable where the facts underlying the motion had been in the movant's possession for more than two years).

Instead of attempting to justify the thirteen-month delay, Petrescu says that he did not actually wait thirteen months to file this motion. He insists that this motion should be treated a "continuation" of his earlier motion under Rule 60(b)(1) – which was filed ten months after the Court entered its June 2023 order. (*See* Reply, ECF No. 74, PageID.918-919.) But he cites no authority for his "continuation" argument. Nor does he explain why he failed to include a request for relief under Rule 60(b)(5) in his earlier motion under Rule 60(b)(1). And he plainly could have done so because his request for relief under Rule 60(b)(5) rests upon the same factual basis – the Court's June 2023 order – as his earlier motion under Rule 60(b)(1). In short, the Court deems the delay here to have been at least thirteen months and to be lacking a reasonable justification.

Further, the SEC would be prejudiced if the Court were to grant relief from the judgment against Petrescu. Fact discovery in this action is now closed. (*See* Order Granting Mot. to Amend Scheduling Order, ECF No. 71.) Returning Petrescu to the mix would prejudice the SEC by "return[ing the litigation] to square one." (Resp., ECF No. 72, PageID.898.)

Finally, Petrescu has failed to show that leaving the judgment intact would be detrimental to the public interest. On the contrary, the public has no interest in

9

upsetting the judgment because, as described below, the judgment remains valid notwithstanding the dismissal of the Rule 10b-5 claims against Japhia.

For all of these reasons, the Court deems Petrescu's request for relief under Rule 60(b)(5) to be untimely.

B

Even assuming, *arguendo*, that Petrescu's motion is timely, he is still not entitled to relief because his motion fails on the merits. To establish an entitlement to modification of the judgment, Petrescu must show (1) that there was a change in factual circumstances that warrants revision, and (2) that those changes make continued enforcement "onerous, unworkable, or detrimental to the public interest." *See Heath v. DeCourcy*, 992 F.2d 630, 635 (6th Cir. 1993) (quoting *Rufo*, 502 U.S. at 384); *see also Northridge Church v. Charter Tp. Of Plymouth*, 647 F.3d 606, 613–14 (6th Cir. 2011) (applying same to consent judgments). Petrescu has failed to make that showing.

Petrescu claims that the Court's dismissal of the Rule10b-5 claims against Japhia is a change in factual circumstances warranting relief from judgment because the Court's ruling "invalidated" the "foundational facts of the judgment." (*See* Mot., ECF No. 69, PageID.874.) That is incorrect.

The Court entered judgment against Petrescu on the SEC's claim against him under Section 4A(a)(5) of the Securities Act and Rule 301(c)(2) thereunder. The

viability of that claim did not depend upon the viability of the SEC's claim against Japhia under Rule 10b-5.  Instead, as explained above, that claim rested on the SEC's allegations that, among other things, Petrescu wrongfully granted crowdfunding access to 420 LLC and Transatlantic despite the fact that he knew or should have known the offerings "presented the potential for fraud and otherwise raised concerns about investor protection." (Compl., ECF No. 1, PageID.36.)   And the SEC's Complaint makes clear that the fraud associated with the 420 LLC and Transatlantic offerings went well beyond Japhia's alleged violations of Rule 10b-5. (*See, e.g., id.* at PageID.27-37.)

For these reasons (and for those identified by the SEC, *see* Resp., ECF No. 72, PageID.894-898), the dismissal of the Rule 10b-5 claims does not undermine the viability of the judgment against Petrescu, and there is no basis for setting the judgment aside.

V

For all of the reasons stated above, Petrescu's motion for relief from judgment (ECF No. 69) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated:  November 7, 2024

11

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 7, 2024, by electronic means and/or ordinary mail.

                                    s/Holly A. Ryan
                                    Case Manager
                                    (313) 234-5126