UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,**

      **Plaintiff,**　　　　　　　　　Case No.: 2:21-cv-12193
　　　　　　　　　　　　　　　　　Hon. Matthew F. Leitman

vs.

**BOBBY SHUMAKE JAPHIA,**

      **Defendant.**

---

## <u>DEFENDANT'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION FOR SUMMARY JUDGMENT</u>

For the reasons stated in his Brief, Defendant, Bobby Shumake Japhia, (Japhia) respectfully requests that this Honorable Court deny Plaintiff's Motion for Summary Judgment (ECF 143).

Respectfully submitted,

/s/Daniel J. M. Schouman　　　
Daniel J. M. Schouman  (P55958)
Schouman and Schiano
1060 E. West Maple
Walled Lake, MI 48390
(248) 669-9830 phone
(248) 669-9840 fax
dschouman@gmail.com

Dated: September 25, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,**

      **Plaintiff,**

vs.

Case No.: 2:21-cv-12193
Hon. Matthew F. Leitman

**BOBBY SHUMAKE JAPHIA,**

      **Defendant.**

---

<u>**DEFENDANT'S BRIEF IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO THE
SEC'S MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………..4-5

Issues Presented...……………………….…………………………………………6

Controlling or Most Appropriate Authority………………………………………7

Relevant Facts and Procedural History………………………………………8-13

Summary Judgment Standard…………………………………………………13-14

Argument…………………………………………………………………….14-21

Conclusion………………………………………………………………………22

# TABLE OF AUTHORITIES

**US Constitution**                                                    Page(s)

U.S. Const. amend V……………………………………………………...6,12,15,16,19,20

**Federal Cases**                                                      Page(s)

Alamo v. Del Rosario,
98 F.2d 328, 331, 69 App.D.C. 47 (D.C. Cir. 1938)……………………………………..7,17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)………………………………………………………………… 13,14,19

*Baxter v. Palmigiano*,
425 U.S. 308 (1976)   ………………………………………………………………………15

Celotex Corp. v. Catrett,
477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)…………………………………..14

First Nat'l Bank of Arizona v. Cities Serv. Co.,
391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968))……………………………………14

*Hernandez v. Coffey*,
582 F.3d 303, 307 (2nd Cir. 2009……………………………………………………………17

*Hill v. West End Railway Co.*,
158 Mass. 458, 459, 460, 33 N.E. 582 (1893)……………………………………………..17

Lefkowitz v. Turley,
414 U.S. 70, 77 (1973)………………………………………………………………………16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)…………………………………………………………………..14,15,16,19

*Spevack v. Klein,*
 385 U.S. 511, 515 (1967)…………………………………………………………....7,16

Federal Statutes

15 U.S.C. § 77d(a)(6), Securities Act of 1933 Section 4(a)(6)…………………………………...8

Rules

17 CFR § 240.10b-5(b)………………………………………………………………………..8

Fed. R. Civ. P. 11……………………………………………………………………………13

Fed. R. Civ. P. 56……………………………………………………………………7,13,19

Fed. R. Civ. P. 36……………………………………………………………..6,11,16,17,18,19

## <u>ISSUES PRESENTED</u>

1. Whether Defendant's Involvement With Bangi, Inc. Is Relevant To Support Plaintiff's Motion For Summary Judgment?

2. Whether Defendant's Assertion Of His Fifth Amendment Privilege At His Deposition Should Create A Negative Inference For Purposes Of Summary Judgment?

3. Does Defendant's Prior Sworn Testimony Rebut Admissions Under FRCP 36(b) That Are Otherwise Established Due To His Failure To Answer Plaintiff's Requests To Admit?

4. Drawing All Inferences In The Light Most Favorable To Defendant, Are There Genuine Issues Of Material Fact So That Plaintiff's Motion Should Be Denied?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Alamo v. Del Rosario*, 98 F.2d 328, 331, 69 App.D.C. 47 (D.C. Cir. 1938)

*Spevack v. Klein,* 385 U.S. 511, 515 (1967)

Fed. R. Civ. P. 56(a).

## RELEVANT FACTS AND PROCEDURAL HISTORY

This case involves Regulation Crowdfunding.[1]  Section 4(a)(6) of the Securities Act of 1933 provides an exemption from registration for certain crowdfunding transactions.[2]  Crowdfunding is relatively new as it was authorized on May 16, 2016.[3]  In fact, this is the Security and Exchange Commission's (SEC) first lawsuit involving Regulation Crowdfunding.[4]

In its motion, the Plaintiff describes the Defendant, Bobby Shumake Japhia (Japhia), as a convicted criminal.[5]  Plaintiff contends that Japhia used others to hide his involvement with two crowdfunding offerings because of two misdemeanor convictions. (ECF 1).[6]  Specifically, the crowdfunding offerings referred to by Plaintiff pertain to 420 Real Estate, LLC (420) and Transatlantic Real Estate, LLC (TRE).   However, Mr. Japhia was neither a member of 420 nor TRE.  Mr. Japhia was neither an officer nor director of 420 or TRE.  Mr. Japhia did not sign or file any disclosure form for Transatlantic or 420.  Accordingly, this Court dismissed Plaintiff's complaint as to Japhia with respect to any claimed Rule 10b-5(b) (17 CFR § 240.10b-5(b)) violations. (ECF 36).  Rule 10b-5(b) states:

---

[1] The SEC has defined Crowdfunding as, "a relatively new and evolving method of using the Internet to raise capital to support a wide range of ideas and ventures. An entity or individual raising funds through crowdfunding typically seeks small individual contributions from a large number of people. Individuals interested in the crowdfunding campaign – members of the "crowd" – may share information about the project, cause, idea or business with each other and use the information to decide whether to fund the campaign based on the collective "wisdom of the crowd."" *www.sec.gov/resources-small-businesses/small-business-compliance-guides/regulation-crowdfunding-small-entity-compliance-guide-issuers#_ftn2*

[2] 15 U.S.C. § 77d(a)(6), Securities Act of 1933 Section 4(a)(6).

[3] *www.sec.gov/resources-small-businesses/small-business-compliance-guides/regulation-crowdfunding-small-entity-compliance-guide-issuers*

[4] *www.sec.gov/newsroom/press-releases/2021-182*

[5] Japhia does not dispute that he was convicted of two misdemeanors.  However, they are expunged.  See EXHIBIT A.

[6] Complaint paragraph 5.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

………

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or…..

Accordingly, the Plaintiff's case against Mr. Japhia is circumstantial in nature.

Contrary to Plaintiff's contention, Mr. Japhia denies the SEC's claim that he hid his involvement with 420 and TRE.  Mr. Japhia contends that he was quite open about his involvement with the companies.  However, his involvement was not as an owner or an individual with any control over the actions of those companies.  His role involved marketing the companies.

On May 5, 2021, Mr. Japhia testified under oath before the SEC with respect to his involvement with 420 and TRE.  Mr. Japhia testified that he was tasked with certain administrative functions and the marketing for 420 and TRE through Shumoja Media Group, LLC, a company in which he was a member (ECF 143-17).[7]  Mr. Japhia further testified as follows:

> MR. URETSKY:  Were you responsible or directly involved in any of these fundraisings, financings, or investment opportunities?
> THE WITNESS:  No.
> MR. URETSKY:  Who was in control of these financings and fundraisings?
> THE WITNESS:  It would be the owner of the 4 company or employees or contract -- contractors.
>  MR. URETSKY:  So, if you could very briefly list for each company who that person was.      T
> THE WITNESS:  Transatlantic Real Estate, Attorney Birch.  Bangi, Inc., all the Bangis, Bangi, Inc., and Bangi Investments, Bangi, LLC, were created by Nicole Birch.  Bangi Operations, managed by the chairman and CEO, Neil Parsan.  420, Willard Jackson.  Did I miss something?  Those are the -- those are the only -- those are the entities.

---

[7] The transcript of Mr. Japhia's (Shumake) testimony is attached as Exhibit 16 to Plaintiff's Summary Judgment motion.  See p. 23, 24, 36, 64 of Exhibit 16.

MR. URETSKY:  Okay. So, for each of these entities and for the fundraisings and
financings themselves, was there an attorney who provided advice to those company for
each of those opportunities?
THE WITNESS:  Yes.
 MR. URETSKY:  And who was that?
THE WITNESS:  Attorney Nicole Birch, Attorney William Eilers, Attorney Douglas
Hampton, Attorney Renette Jackson.  Let me see.  There was a couple more attorneys
that I worked with, but I don't recall their names, specifically.
MR. URETSKY:  Okay.
THE WITNESS:  Attorney Mark Waller.  Marc Adesso.  I mentioned William Eilers,
correct?
MR. URETSKY:  You did.  And my question is, did these attorneys -- and don't tell me
what they said, but did these attorneys provide advice to these companies about how to
go about the legal fundraising methods?
THE WITNESS:  Absolutely.  I wouldn't have moved without them.
 MR. URETSKY:  And did you overrule these attorneys and say no, let's do it a different
way?
THE WITNESS:  Absolutely not.
MR. URETSKY:  Okay.  To the best of your knowledge, did the companies themselves,
and you, follow what the attorneys said was a legal way of doing things?
THE WITNESS:  100 percent.  I was not interested in breaking any rules or any
laws……[8]

## Evidence Relied Upon By SEC

In September of 2021, the SEC filed this lawsuit against numerous individuals and

entities in addition to Mr. Japhia.  Specifically, the other Defendants in this case were 420,

Willard L. Jackson, Nicole T. Birch, Vicent Petrescu, and Trucrowd, Inc. Dba Fundanna.

(ECF 1).  Except for Japhia, all the Defendants worked out a settlement with the SEC.

However, the involvement of certain previously dismissed Defendants did not end with the

SEC dismissing them from this cause of action.  The SEC is now using statements from Co-

Defendants to support their Motion for Summary Judgment.  In particular, the SEC is

substantially relying on the testimony of Co-Defendant, Willard L. Jackson (Jackson) to

support its summary judgment motion.  In fact, Plaintiff cited testimony from Mr. Jackson 12

---

[8]The transcript of Mr. Japhia's (Shumake) testimony is attached as Exhibit 16 to Plaintiff's Summary Judgment
motion.  See p. 194-196 of Exhibit 16.

<u>times</u> to support its motion. (ECF 143-12)[9]  Yet, it is not disputed that Jackson actually made the crowdfunding offering for 420, and he represented in the crowdfunding offering that he was the sole officer of the company and controlled 100% of the voting authority for the company. (ECF 143-4).  Additionally, the Plaintiff claims that Jackson wrongfully took $283,879 for himself and his affiliated companies from said offering. (ECF 143-11)[10] .

Plaintiff also heavily relies upon Mr. Japhia failing to respond to Plaintiff's Rule 36 requests to admit while he was <u>unrepresented</u> by counsel to support its request for summary judgment. (ECF 143-10).  In fact, the Plaintiff cited Japhia's failure to respond <u>26 times</u> to support its motion.[11]  Said reliance substantially ignores the contrary prior sworn testimony of Japhia before the SEC on May 5, 2021 (ECF 143-17).

Plaintiff further claims that Nicole Birch (Birch) an attorney who is apparently versed in securities law was acting as a strawman for Japhia.[12]  However, the SEC simultaneously accused Birch of wrongfully taking $310,360 from the TRE offering.[13]  Additionally, it is not disputed that the TRE Offering Statement disclosed that Birch, and not Japhia served as the company's sole officer, director, or "person occupying similar status or performing a similar function."[14]  Accordingly, per Birch's own representations, she and she alone held control of TRE.

---

[9] (Ex. 11, Jackson Test. 26:13-27:7; 32:19-33:15.); (Ex. 11, Jackson Test. 39:15-41:15, 116:24-118:21.);(… Ex. 11, Jackson Test. 32:19-33:15, 34:13-22.); (Ex. 11, Jackson Test. 26:14-27:20, 34:22, 44:8-45:7.); (….Ex. 11, Jackson Test. 34:13-20.); (Ex. 11, Jackson Test. 34:8-12.); (*Id.*, Jackson Test. 32:19-33:15.); (…Ex. 11, Jackson Test. 26:20-28:8.); (Ex. 11, Jackson Test. 25:24-26:4, 37:11-14.); (Ex. 11, Jackson Test. 84:22-85:17); (Ex. 11, Jackson Test. 98:18-20; 110:21-111:3.);( ….Ex. 11, Jackson Test. 60:1-15, 124:15-125:25.).
[10] Ex. 10, Tushaus Decl. ¶¶ 22-26 & Ex. C.
[11] ECF 143-10 (Ex. 9, RFA 1….);(Ex.9, RFA 2….); (Ex. 9, RFA 13.); (Ex. 9,  RFA 11….);(Ex. 9, RFA 6, 7….);(Ex. 9, RFA 17, 26….);. (Ex. 9, RFA 6.) (Ex. 9, RFA 8….);(Ex. 9, RFA 6.); (Ex. 9, RFA 4); (Ex. 9, RFA 15); (Ex. 9, RFA 19, 20, 21); (*Id.*, RFA 22.); (Ex. 9, RFA 18.); (Ex. 9, RFA 7.); (*Id.*, RFA 9…); (Ex. 9, RFA 7); (Ex. 9, RFA 29.);  (*Id.*, RFA 23, RFA 5.); (*Id.*, RFA 28.); (…Ex. 9, RFA 34.): Ex. 9, RFA 34.); (…Ex. 9, RFA 27.) (…Ex. 9, RFA 27.)(… Ex. 9, RFA 27.); (…Ex. 9, RFA 27…).
[12] (ECF 143-17) - see Plaintiff's Exhibit 16 in support of their Summary Judgment Motion p. 202 where Japhia explains Birch was retained to handle the crowd funding offerings.
[13] See ECF 143(Tushaus Decl. ¶¶ 13, 15, 17 & Ex. B at 2.)
[14] See ECF 143-3 (Plaintiff's Exhibit 2 TRE Offering).

On October 8, 2024, a grand jury indicted Japhia on securities related crimes and the Plaintiff simultaneously filed another civil action against him in the District of Columbia.[15] In that proceeding, like here, the SEC contends that Japhia used others as strawmen.[16]  Based on the criminal complaint, Japhia, *in pro per*, unsuccessfully filed a motion to stay this litigation. (ECF 88).  With a criminal investigation underway, and with the advice of his criminal defense attorney, Japhia, acting *pro se* in this matter, elected to assert his Fifth Amendment right to remain silent at his deposition on September 25, 2024.[17] (ECF 143-24).  To further support its Motion for Summary Judgment, the Plaintiff is seeking an adverse inference as to "Japhia's culpable state of mind." (ECF 143 p.32).  According to its Brief, the SEC seeks an adverse inference with respect to the following areas:

a.   His role in the TRE and 420 Offerings.

b.   The amount of money he received from the funds raised through the TRE and 420 Offerings.

c.   His connection with numerous persons and businesses who received money from the proceeds of the TRE Offering and why he directed Birch to transfer money from the TRE Offering proceeds to those persons and businesses.

d.   His connection with numerous persons and businesses who received money from the proceeds of the 420 Offering and why he directed Hampton to transfer money from the 420 Offering proceeds to those persons and businesses.

e.   Whether he controlled Bangi, Inc.

f.   The relationship between Bangi and TRE.

g.   The relationship between Bangi and 420.

h.   The other Bangi entities and his role with those entities.

i.   A description of Shumoja.

j.   His control of Shumoja.

k.   Shumoja affiliates and his role with those entities. (ECF 143 p. 12-13).

**<u>SEC Employee/Witness Makes False Representations.</u>**

---

[15] Criminal case no.: 1:24-cr-00450 (D.D.C.); civil case no.: 1:24-cv-02870 (D.D.C.).
[16] See the SEC's litigation release at www.sec.gov/enforcement-litigation/litigation-releases/lr-26150.
[17] U.S. Const. amend V.

Based predominantly on the above evidence, the Plaintiff filed its Motion for Summary Judgment on February 7, 2025 (ECF 91).  Prior to said motion being heard, the Plaintiff filed a Notice on May 16, 2025 (ECF 96) that disclosed inaccuracies in the Declaration of Pesach Glaser, a SEC accountant assigned to this case.  On May 21, 2025, Japhia filed, *pro se,* a Motion to Dismiss under Fed. R. Civ. P. 11 (ECF 98) alleging intentional, improper acts by the Plaintiff when it submitted the Declaration of Mr. Glaser.  Japhia further alleged that Plaintiff's conduct was politically motivated due to his involvement with the commutation of former Detroit Mayor Kwame Kilpatrick's prison sentence by President Trump.

On June 27, 2025 the Plaintiff filed its motion requesting the Court to substitute the Declaration of Ann Tushaus for that of Pesach Glaser and to deem all references to the Glaser Declaration to be references to the corresponding paragraphs of the Tushaus Declaration. (ECF 139).  Defendant now through counsel, filed a response in opposition to the request. (ECF 141) and the Court issued on order administratively terminating the then pending and unheard motions (ECF Nos. 91, 97, 98, 99, 103, 107, 110, 113, 118, 134, 135, 136, 139) and setting forth a scheduling order for Plaintiff to file a new summary judgment motion and for Defendant to respond. (ECF 142).  Both Plaintiff and Defendant have timely filed per said order.

## SUMMARY JUDGMENT STANDARD

Per Fed.R.Civ.P. 56, summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has carried this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*; Fed.R.Civ.P. 56(e)(2).

After the parties have presented their evidence, "the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## **ARGUMENT**

### 1. **Japhia's Involvement With Bangi, Inc. Is Irrelevant To Plaintiff's Motion**

In its Motion for Summary Judgment, the Plaintiff refers to Bangi, Inc. (Bangi) <u>32</u> <u>times</u>. Japhia contends that all allegations pertaining to Bangi are irrelevant for purposes of

14

summary judgment; and therefore, should not be considered.  First, Japhia is not being sued by the SEC for any conduct pertaining to Bangi.  Second, the SEC concedes that Bangi never even raised money. (ECF 143)[18].  In fact, Bangi never engaged in any crowdfunding whatsoever. (ECF 1).[19] Bangi is not the subject of this action. Accordingly, Mr. Shumake's alleged involvement with Bangi is irrelevant to support Plaintiff's request for summary Judgment.  To the extent the SEC is relying on alleged conduct of Japhia as it pertains to Bangi to prove he acted in conformity therewith as to 420 and TRE, such evidence, if admissible, is for a trier of fact to determine at trial.  In evaluating the evidence presented on a summary judgment motion, the court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).  Accordingly, any inference as to conformity of conduct must be drawn in Japhia' favor for purposes of summary judgment. Therefore, what Japhia did or did not due as to Bangi should bear no weight in the Court's determination of this motion.

2.  **Japhia's Assertion Of His Fifth Amendment Privilege At His Deposition Should Not Create Any Negative Inference For Purposes Of Summary Judgment.**

On October 8, 2024, Japhia was indicted by a grand jury out of the District of Columbia.[20]  Less than two weeks before the indictment, on September 25, 2024 (ECF 143-24) Japhia was deposed in this matter.  At his deposition, Japhia asserted his privilege to remain silent in accordance with the Fifth Amendment to the United States Constitution[21]. Japhia asserted this privilege per the advice of his criminal defense attorney (EXHIBIT B). Plaintiff now argues that Japhia's assertion of his Fifth Amendment privilege should be used

---

[18] See page 3 of the SEC's Brief in Support of Summary Judgment.
[19] See paragraph 26 of Plaintiff's Complaint.
[20] [20] Criminal case no.: 1:24-cr-00450 (D.D.C.).
[21] U.S. Const. amend V.

as an adverse inference against him in accordance with *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).  However, in *Baxter*, the Supreme Court only stated that an adverse inference is not forbidden.  *Id* at 318.  It did not promote the use of the same.

A party is permitted to invoke the privilege against self-incrimination in civil cases. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).  In fact, in *Spevack v. Klein,* 385 U.S. 511, 515 (1967) the Supreme Court cautioned the imposition of any sanction with respect to the assertion of the Fifth Amendment privilege. Japhia asserted the privilege based on advice of his counsel.  (EXHIBIT B).  Moreover, the SEC is claiming a common plan and scheme in both this case and the case out of the District of Columbia where Japhia is indicted. Specifically, the SEC claims that Japhia used a strawman in both cases to hide his involvement.[22]  As the Supreme Court cautions sanctions for Fifth Amendment assertions and as courts must draw all inferences in the light most favorable to the nonmoving party, *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348 (1986), the Defendant contends that no inference should be drawn that negatively impacts Jahpia for purposes of summary judgment.  Defendant's position is further supported by the fact that the SEC had the opportunity to ask Japhia questions under oath where this privilege was not invoked. (ECF 143-17).  Accordingly, Defendant respectfully requests that for summary judgment purposes, the Court not adversely infer anything against him for his assertion of the Fifth Amendment privilege.

### 3. <u>Prior Testimony Of Japhia Rebuts Admissions Under FRCP 36(b).</u>

Japhia concedes that per Subdivision (b) of FRCP 36 his failure to timely respond to

---

[22] See ECF 1 (Complaint) and the SEC's litigation release at www.sec.gov/enforcement-litigation/litigation-releases/lr-26150.

Plaintiff's Requests for Admissions deems the requests admitted.  However, said rule does not indicate the extent to which Japhia is bound by these admissions.  Accordingly, Japhia contends that his prior sworn testimony that contradicts the admissions acts to rebut said admissions.  Japhia relies on *Alamo v. Del Rosario*, 98 F.2d 328, 331, 69 App.D.C. 47 (D.C. Cir. 1938) for the proposition that contradictory testimony, even from the same witness, requires a jury to sort out the truth:

> the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source. *Id.* at 331. Quoting *Hill v. West End Railway Co.*, 158 Mass. 458, 459, 460, 33 N.E. 582 (1893).

As Japhia, previously testified under oath before the SEC's attorneys, said testimony should not wholly be disregarded because he failed to respond to a Rule 36 request while he was acting *pro se*.   In fact, special care should be given to *pro se* defendants with respect to dispositive matters in order to ensure fairness.  For example, in *Hernandez v. Coffey*, 582 F.3d 303, 307 (2nd Cir. 2009) the Second Circuit vacated and remanded a case that was summarily dismissed to ensure a *pro se* litigant was made aware of the potential consequences of a dispositive motion.

Here, Japhia was not made aware of the consequences for his failure to respond to Plaintiff's requests for admissions.  In fact, the Plaintiff's instructions to, at the time a *pro se* litigant, did not notify Japhia that his failure to timely respond to the same would deem such request admitted. (ECF 143-10)[23].  Despite failing to notify him of the procedural consequence, Plaintiff requests the Court to utilize Japhia's failure to answer a Rule 36 request as grounds to summarily dispose of this case in their favor.  Japhia contends that he

---

[23] See the Instructions to the request attached to Plaintiff's Motion as Exhibit 9.

should be afforded some deference with respect to his failure to respond while unrepresented by counsel, especially when the instructions provided by the Plaintiff did not notify him of the consequence for not answering.  Specifically, he contends that his procedural failure should not preclude the trier of fact from hearing the matter when his actual sworn testimony contradicts the unanswered admissions being proffered by the Plaintiff in support of their motion.

Relevant sworn testimony by Japhia that is contrary to the Rule 36 admissions include:

a.   Japhia was not responsible or directly involved with the fundraising, financing, or investment opportunities pertaining to 420 and TRE.

b.   Attorney Birch controlled TRE.

c.   Willard Jackson controlled 420.

d.   Attorneys were tasked with providing advice for the fundraising and financing of 420 and Tre including former co-defendant, Nicole Birch.

e.   Japhia never interfered with the direction of the legal counsel.[24]

In sum, for the foregoing reasons, Japhia contends that a question of material fact exists regarding his involvement with TRE and 420 that merits a trial in this case and his failure to answer Plaintiff's Rule 36 admissions is not dispositive on the matter as he has contradicted the same in sworn testimony and was never informed by the Plaintiff of the consequence of his failure to respond despite being a *pro se* litigant.

**4.   <u>Drawing All Inferences In The Light Most Favorable To Defendant, Genuine Issues Of Material Fact Exist And Plaintiff's Motion Should Be Denied.</u>**

---

[24] The transcript of Mr. Japhia's (Shumake) testimony is attached as Exhibit 16 to Plaintiff's Summary Judgment motion.  The above statements are located on p. 194-196 of Exhibit 16.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(a). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

The SEC's case boils down to their contention that Japhia knowingly, or recklessly, participated in a scheme to defraud; or he aided and abetted Birch and/or Jackson in the violation of the Securities Act or the Exchange Act.  "The essence of his scheme was to conceal his own involvement in the TRE and 420 Offerings and misappropriate the investors' money." (ECF 143)[25].  In support of its claims, the SEC argues that there is no genuine issue as to any material fact with respect to Japhia:

      a.    controlling Tre and 420;

      b.    using Birch and Jackson as strawmen;

      c.    devising the offerings simply as vehicles to misappropriate investor funds;

      d.    directing large sums of money to his family and businesses;

      e.    directing the way the offering proceeds were fraudulently diverted;

      f.    working with Birch and Jackson to defraud.

Setting aside Japhia's failure to answer the Rule 36 requests, and any inference for his assertion

---

[25] Quoted from p. 16 of Plaintiff's Brief In Support of Motion for Summary Disposition.

of the Fifth Amendment, the SEC's case is substantially circumstantial and is contradicted by

Japhia's own sworn testimony.  Specifically, Japhia testified that:

    a.    he was not responsible or directly involved with the fundraising, financing, or investment opportunities pertaining to 420 and TRE;

    b.    Attorney Birch controlled TRE;

    c.    Willard Jackson controlled 420;

    d.    Attorneys were tasked with providing advice for the fundraising and financing of 420 and Tre including former co-defendant, Nicole Birch;

    e.    Japhia never interfered with the direction of the legal counsel. (ECF 143-17)[26].

Additionally, testimony by Co-Defendants in this action that point the finger at Japhia is

contradicted by said Defendants' own conduct.  Specifically, the individuals responsible for the

TRE and 420 offerings were Nicole Birch and Willard Jackson respectively.  Jackson, a

businessman with extensive experience as the previous CEO of Ebony Magazine, was the

"CEO and the sole director" of 420 and solely responsible for the crowd funding in that

company. (ECF 1).[27]

Nicole Birch, an attorney who held herself out to be a specialist in securities laws, was

the "one hundred percent owner, CEO, chairman and sole director" of Transatlantic Real

Estate according to its offering statement. (ECF 1).[28]  While the Complaint alleges that

Shumake introduced Nicole Birch to Vincent Petrescu at TruCrowd, the SEC concedes

"Birch, with Petrescu's assistance, wrote the TRE Form C and offering statement." (ECF 1)[29].

The Complaint also concedes Shumake provided nothing more than casual, uninformed

---

[26] The transcript of Mr. Japhia's (Shumake) testimony is attached as Exhibit 16 to Plaintiff's Summary Judgment motion.  The above statements are located on p. 194-196 of Exhibit 16.
27 Quoted from paragraph 12 of Plaintiff's Complaint.
28 Quoted from paragraph 17 of Plaintiff's Complaint.
[29] Quoted from paragraph 31 of Plaintiff's Complaint.

advice to Birch (a lawyer), with whom Shumake was then in a relationship. "Transatlantic Real Estate filed the Form C and offering statement with the SEC on September 12, 2018. Birch signed the Form C as the company's sole officer." (ECF 1).[30] Accordingly, any materially false statements in the offering statement were drafted and signed by attorney Birch. Any failures on the part of the company to perform were the responsibility of the sole owner, attorney Birch. Moreover, Jackson and Birch, who settled their lawsuits with the SEC were accused of wrongfully taking $283,879.00 (ECF 143-11)[31] and 310,360.00 (ECF 143-11) respectively.[32]

Finally, with respect to the proffered evidence regarding the allocation of the money raised by 420 and TRE, this too raises questions of fact, but for unusual reasons. Specifically, the SEC previously relied upon an inaccurate sworn declaration from a claimed CPA, Pesach Glaser, in support of its request for summary judgment. (ECF 91). Plaintiff now relies on the declaration of Ann Tushaus to support the same financial conclusions. As inaccuracies were previously filed, and a new declaration was recently obtained with the same financial conclusions, coupled with Japhia's own assertion that this cause of action against him is politically motivated due to his involvement with Kwame Kilpatrick's commutation by President Trump, Japhia contends that under those circumstances, that questions of fact exist as to the accuracy of Ms. Tushaus' declaration. Accordingly, even as to the financial allegations in this matter, questions of material fact are present precluding resolution *via* summary judgment.

---

[30]Quoted from paragraph 32 of Plaintiff's Complaint.
[31] Ex. 10, Tushaus Decl. ¶¶ 22-26 & Ex. C.

[32] See ECF 143(Tushaus Decl. ¶¶ 13, 15, 17 & Ex. B at 2.)

## **CONCLUSION**

For the foregoing reasons, the Defendant requests that Plaintiff's Motion for Summary

Judgment (ECF 143) be denied as genuine issues of material facts are present in this case.

Respectfully submitted,

/s/Daniel J. M. Schouman
Daniel J. M. Schouman  (P55958)
Schouman and Schiano
1060 E. West Maple
Walled Lake, MI 48390
(248) 669-9830 phone
(248) 669-9830 fax
dschouman@gmail.com

Dated: September 25, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2025 I electronically served this document together

with this certificate with the clerk of the court using the Court's ECF filing system which will

send notification to all attorneys of record.

Respectfully Submitted,

/s/ Daniel J. M. Schouman
Daniel J. M. Schouman